WILL OF HINNERS: HINNERS and another, Appellants, vs. HINNERS and another, Respondents.

*October 10—November 6, 1934.*

For the appellants there was a brief by *Lines, Spooner & Quarles* of Milwaukee, attorneys, and *James T. Guy* of Milwaukee and *George K. Gardner* of Cambridge, Massachusetts, of counsel, and oral argument by *Mr. Guy*.

For the respondents there was a brief by *Bottum, Hudnall, Lecher, McNamara & Michael*, attorneys, and *George D. Spohn* of counsel, all of Milwaukee, and oral argument by *Mr. Spohn*.

FRITZ, J.   The order appealed from construed the provision,—

"I give, devise and bequeath to my wife, Flora Hinners, two hundred twenty-five (225) shares of my stock in the Geo. H. Smith Steel Casting Company in addition to the provisions for her benefit in said Will."

which was in a codicil dated February 27, 1924,—

"to have the force and effect that said deceased gave, devised and bequeathed to his wife, Flora Hinners, the equivalent of the 225 shares of the Geo. H. Smith Steel Casting Company given to her by the deceased in the Codicil to said Last Will and Testament dated February 27, 1924, and that said equivalent is represented by the number of shares of stock which the deceased received in the reorganization of the company attributable to said 225 shares as the avails thereof, and

is represented by 1125 shares of the Common capital stock of no par value and 405 shares of the Preferred stock."

The facts which are essential in passing on this appeal are as follows: The testator died November 22, 1932, survived by his wife, Flora Hinners, and by Howard E. Hinners and Ethel J. Hinners, adults, who were his children. At the time of his death and during all of the years since, as well as for some time prior to May, 1920, he had been a stockholder and director of the Geo. H. Smith Steel Casting Company (hereinafter called the Smith Company). Up to May, 1928, he was also the secretary and treasurer of that company, and from that time until his death he was the president thereof. In his will, dated May 15, 1920, he bequeathed to his wife, Flora Hinners, the sum of $35,000 and his household furniture, clothing, and jewelry; and he created two trust funds aggregating $25,000 for the benefit of his children, and also a separate trust of all residue of his estate, with provision for the payment of the income thereof to his wife during her lifetime, and thereafter to his children, until the son became thirty-seven years of age, whereupon the trust property was to be divided equally between his children. By a codicil, dated July 14, 1920, he changed the disposition of the residue in the event of the death of his son without issue prior to the distribution thereof. On May 10, 1921, he executed a second codicil which, without making any other change in his will, provided—

"I give, devise and bequeath to my wife, Flora Hinners, twenty-five (25) shares of my stock in the Geo. H. Smith Steel Casting Company, in addition to the provision for her benefit made in my said will."

On May 10, 1921, the only Smith Company stock which the testator owned, consisted of eighty-five shares of common stock. That stock, according to the books of the corporation, had a book value, on January 1, 1921, of $1,264.79

per share, or $31,619.75 for those twenty-five shares. On August 17, 1922, the Smith Company declared an eight hundred per cent common stock dividend. By virtue of that dividend, Hinner's holdings were increased from eighty-five shares to seven hundred and sixty-five shares of common stock, but its book value, on January 1, 1923, was only $114.84 per share. On February 27, 1924, Hinners executed a third codicil, in which he revoked and canceled the codicil executed on May 10, 1921, under which his wife was to receive twenty-five shares of his Smith Company common stock, and provided expressly that "in lieu thereof" he made the codicil with the provision quoted above, by which he bequeathed to her two hundred and twenty-five shares of his stock in that corporation. At about that time the book value of the two hundred and twenty-five shares bequeathed thereby was $25,839, as compared with the book value, on January 1, 1921, of $31,619.75 for the twenty-five shares bequeathed in the former codicil of May 10, 1921. By May 22, 1928, the book value of the common stock had increased to $256.47 per share, or $57,705.75 for the two hundred and twenty-five shares bequeathed to Mrs. Hinners. On that date, by resolutions duly adopted with the approval of Hinners at stockholders' and directors' meetings, which he attended, the capital structure of the Smith Company was changed by a restatement of its authorized capital stock, and corresponding amendments of its articles of organization. Thus the stockholders adopted a resolution which authorized the board of directors to require the holders of common stock to surrender their certificates therefor, "and to accept, in lieu thereof and in exchange therefor, certificates for common stock and preferred stock respectively, . . . upon such basis as may be determined by the board of directors;" and a resolution adopted by the board of directors provided that the outstanding four thousand five hundred shares of common

stock "be, pursuant to a plan of reorganization, exchanged *pro rata* for" two thousand two hundred and fifty shares of preferred stock (of $100 par value each) and twenty-two thousand five hundred shares of common stock without par value, but at a valuation of $10 per share, making the total capital valuation of common stock $225,000, and of preferred stock $225,000, or a total of $450,000—"being equal to the par value of the present outstanding four thousand five hundred shares of common stock; and that there be and there hereby is in pursuance of said plan of reorganization declared as a preferred stock dividend to the present holders of the common capital stock" five thousand eight hundred and fifty shares of par value of $585,000 of preferred stock "so that the present common stockholders of this corporation shall receive in pursuance of said plan of reorganization, in exchange for the four thousand five hundred shares of common stock of said corporation now outstanding *pro rata*," twenty-two thousand five hundred shares of the common stock without nominal or par value of this corporation, and two thousand two hundred and fifty shares of the preferred stock of this corporation, "and as a stock dividend," five thousand eight hundred and fifty shares of such preferred stock.

Pursuant to that plan of reorganization and change in the capital structure, Hinners received in exchange for eight hundred and thirty shares of common stock four thousand one hundred and fifty shares of the new common stock and one thousand four hundred and ninety-four shares of preferred stock, of which one thousand one hundred and twenty-five shares of common stock and four hundred and five shares of preferred stock were found by the county court to be attributable to and the equivalent and avails of the two hundred and twenty-five shares of common stock bequeathed by Hinners to his wife by the codicil of February 27, 1924. Upon that

reorganization and change in the capital structure, the book value of the new common stock was $15.29 per share, or $17,201.25 for one thousand one hundred and twenty-five shares; and the value of the four hundred and five shares of preferred stock at $100 per share was $40,500, so that the total value of the one thousand one hundred and twenty-five shares of new common stock and the four hundred and five shares of preferred stock, considered as the avails of two hundred and twenty-five shares of the former common stock, would be $57,701.25. That total amount is within $4.50 of the book value which the two hundred and twenty-five shares of the bequeathed common stock had at the time the change was made in capital structure, by issuing for each share of former common stock one-half share of preferred stock and five shares of the new issue of common stock, and, in connection therewith, issuing one and three-tenths shares of the additional preferred stock by capitalizing, in the form of additional preferred stock, the $585,000 accumulated surplus account. When Hinners died, on November 22, 1932, he still owned four thousand one hundred and fifty shares of his common stock and one thousand five hundred and thirty-nine shares of his preferred stock. On May 28, 1928, he had contracted to sell three thousand and thirty-four shares of his common stock, and pursuant thereto, he had transferred one thousand five hundred and sixty-two shares, but those transactions were subsequently abandoned and the one thousand five hundred and sixty-two shares were reconveyed to Hinners in May, 1932.

As Hinners described and identified the stock bequeathed to his wife by the codicil of February 27, 1924, as two hundred and twenty-five shares "of my stock" in the Smith Company, that bequest was a specific and not a general legacy. *Fidelity Nat. Bank & Trust Co. v. Hovey,* 319 Mo. 192, 5 S. W. (2d) 437, 73 A. L. R. 1228, 1237; *Harvard Unitarian*

*Society v. Tufts,* 151 Mass. 76, 23 N. E. 1006, 7 L. R. A. 390, 391 (see notes) ; *In re Ferreck's Estate,* 241 Pa. 340, 88 Atl. 505 ; see notes in *In re Snyder's Estate,* 217 Pa. 71, 66 Atl. 157, 11 L. R. A. (N. S.) 49 ; *Tifft v. Porter,* 8 N. Y. 516 ; *Dryden v. Owings,* 49 Md. 356 ; *In re Low's Estate,* 103 N. J. Eq. 435, 143 Atl. 222 ; *Sherman v. Riley,* 43 R. I. 202, 110 Atl. 629 ; *In re Clifford* (1912), 1 Ch. 29 ; *In re Leeming* (1912), 1 Ch. 828, L. J. Ch. (N. S.) 453 ; 3 Woerner, Administration, p. 1515, par. 444 ; 3 Pomeroy, Eq. Jur. (2d ed.) par. 1130 ; 28 R. C. L. p. 290. As that was a specific legacy, no ademption thereof would result as long as the subject-matter of the legacy was still to be found among the assets of the testator at the time of his death, even though the subject-matter thereof was somewhat changed in form. Thus in *Fidelity Title & Trust Co. v. Young,* 101 Conn. 359, 125 Atl. 871, the court said:

"Although specific, these legacies were not adeemed by the subdivision of each of the original shares of the par value of $100 into five shares of the par value of $20 each."

Likewise, *In re Brann,* 219 N. Y. 263, 114 N. E. 404, 405, Mr. Justice CARDOZO said:

"It may be that where the change is merely formal, as where a company is reorganized and there is a re-issue of the shares, the identity of the gift will be held to be substantially preserved."

In *Chase Nat. Bank v. Deichmiller,* 107 N. J. Eq. 379, 152 Atl. 697, 699, the court said:

"A specific legacy is adeemed only when the subject is lost, destroyed, or subsequently disposed of by testator, or so altered in form, by testator's subsequent acts, as to indicate a change of testamentary intent on his part. Conversely, if the subject, although somewhat changed in form, be not sufficiently changed to indicate change of testamentary intent, there is no ademption. See *In re Cooper,* 95 N. J. Eq. 210, 123 Atl. 45, 30 A. L. R. 673.

". . . Obviously the thing which testator intended to give was not the mere paper certificates for 800 shares of stock, but the interest in the company which those shares represented. The evidence showed that at the date of the will those shares had a market value of $180 apiece; the 800 shares had an aggregate value of nearly $150,000. It was that interest, worth approximately $150,000, which testator bequeathed. At the time of testator's death, that interest was represented not by 800 of the total number of shares of stock then extant, but by 3,000 of such shares. At testator's death, the evidence showed, the value of a single share was only $68, the value of 800 of such shares only a little over $50,000.

"It is clear that at the time of the making of the will the total net assets of the corporation were represented by the total number of shares of stock then issued and outstanding, and that each share of stock represented an aliquot part of the total net assets. The acts of the corporation in increasing the number of shares issued, not by selling additional shares in exchange for additional capital, but simply by multiplying the shares of stock outstanding by $3\frac{3}{4}$, without any increase in the net assets, had no other result than this, that the interest in the corporation which theretofore had been represented by one share of old stock was thereafter represented by $3\frac{3}{4}$ shares of the new stock.

"The thing bequeathed, then, the interest in the corporation represented by 800 shares of stock at the time of executing the will, was still owned and possessed by testator at the time of his death, slightly changed in form (*i. e.,* being then represented by 3,000 shares of stock), but not sufficiently changed to indicate a change of testamentary intent. The bequest in the will therefore must be deemed to carry the thing bequeathed, in its altered form (*i. e.,* the 3,000 shares)."

See also 40 Cyc. 1921; *Pope v. Hinckley,* 209 Mass. 323, 95 N. E. 798; *Goode v. Reynolds,* 208 Ky. 441, 271 S. W. 600, 63 A. L. R. 631; *Prendergast v. Walsh,* 58 N. J. Eq. 149, 42 Atl. 1049; *In re Martin's Will,* 252 N. Y. 582, 170 N. E. 151; *Mallam v. McFie* (1912), 1 Ch. 29; *In re Leeming* (1912), 1 Ch. 828; *Johns Hopkins University v. Uhrig,* 145 Md. 114, 125 Atl. 606; *In re Mandelle's Estate,*

252 Mich. 375, 233 N. W. 230; *Cornwell v. Mt. Morris M. E. Church,* 73 W. Va. 96, 80 S. E. 148; *Spinney v. Eaton,* 111 Me. 1, 87 Atl. 378; *In re Thos. Pierce,* 25 R. I. 34, 54 Atl. 588.

It is manifest, in the case at bar, that by reason of the reorganization and restatement of the capital structure of the Smith Company on May 22, 1928, there was but a formal change and substitution of one thousand one hundred and twenty-five shares of the new common stock, and, at least, one hundred and twelve and one-half shares of the four hundred and five shares of the preferred stock which Hinners then received, in exchange for two hundred and twenty-five shares of common stock, which he then surrendered in accordance with the plan and resolutions for the reorganization and restatement of the capital structure of the corporation. As under that plan and those resolutions the certificates for the four thousand five hundred shares of outstanding common stock were expressly required to be "surrendered," and there were to be "accepted in lieu thereof and in exchange therefor" certificates for common stock and preferred stock, respectively, at the rate of five shares of new common stock and one-half share of preferred stock for each share of the former common stock, the new stock received by Hinners on that basis to the extent of one thousand one hundred and twenty-five shares of the new common stock, and one hundred and twelve and one-half shares of the preferred stock, received in lieu and exchange of two hundred and twenty-five shares of his former common stock, can be so readily traced that the identity thereof can well be deemed, in law, to have been so substantially preserved as to be identical, in all but form, with the two hundred and twenty-five shares of the common stock which Hinners bequeathed to his wife. Consequently, under the authorities cited above, those one thousand one hundred and twenty-five shares of

common stock and one hundred and twelve and one-half shares of preferred stock, certainly passed to her by that bequest.

It is equally obvious that the stock dividend of one thousand four hundred and ninety-four shares of preferred stock, which Hinners received in May, 1928, was likewise distributed as but a part of the plan of reorganization and restatement of the capital structure, which was effected by the resolutions adopted on May 22, 1928; and that of those one thousand four hundred and ninety-four shares the distribution of two hundred and ninety-two and one-half shares to Hinners was directly attributable to two hundred and twenty-five shares of his common stock, which were part of the eight hundred and thirty shares of the common stock which then were surrendered by him pursuant to and in accordance with that plan of reorganization and change in the capital structure. In fact and substance, under and in accordance therewith, Hinners surrendered the two hundred and twenty-five shares of bequeathed common stock not merely for the one thousand one hundred and twenty-five shares of new common stock and one hundred and twelve and one-half shares of preferred stock, but also for two hundred and ninety-two and one-half additional shares of the preferred stock which, as was expressly provided in the resolution, was declared and distributed "in pursuance of said plan of reorganization . . . as a preferred stock dividend to the present holders of the common capital stock." That change in the capital structure, under and by virtue of the express terms of the resolution, was made "so that the present common stockholders of this corporation shall receive in pursuance of said plan of reorganization, in exchange for the four thousand five hundred shares of common stock now outstanding *pro rata*," twenty-two thousand five hundred shares of common stock and two thousand two hundred and fifty

shares of preferred stock, and as a stock dividend, five thousand eight hundred and fifty shares of preferred stock. The manner in which that resolution unequivocally coupled up that stock dividend with the plan of reorganization, and made the stock issued in the form of that dividend a part and portion of what was to be received *pro rata* in lieu of and in exchange for each share of common stock, which included each of the two hundred and twenty-five shares of common stock which Hinners had bequeathed to his wife, effectually constituted all of the preferred stock then issued part of the property which was then received by each stockholder in lieu of his former holdings of common stock, by virtue of his fractional interest, as a holder of common stock in the corporate assets, including the accumulated surplus of $585,000 which was by that change in the capital structure capitalized by the additional issue of the five thousand eight hundred and fifty shares of preferred stock, instead of continuing to carry that amount of $585,000 on the corporate books as accumulated surplus. That issue of preferred stock, although nominally distributed in the form of a stock dividend, is so obviously and inseparably but part of what Hinners received in lieu and in exchange of the bequeathed two hundred and twenty-five shares of stock, that it differs materially in its legal effect and consequences from an ordinary stock dividend which is declared without materially changing or affecting the form of the shares of stock on which the dividend is declared. Consequently, as those two hundred and ninety-two and one-half shares of preferred stock, although issued nominally as a stock dividend, were in fact received by Hinners as but part of a merely formal change and reissue in place of the two hundred and twenty-five shares of stock bequeathed to his wife, they also passed, under the principles stated and applied in the cases cited above, to Mrs. Hinners by virtue of that bequest; and

the rule that a specific legatee is generally not entitled to dividends, whether in cash, property, or stock, which accrued prior to the death of the testator (Cook, Corporations (8th ed.), § 301; 11 Fletcher, Cyc. Corporations, p. 955; *Hicks v. Kerr,* 132 Md. 693, 104 Atl. 426; *McGregory v. Gaskill* (Mo. App.), 296 S. W. 833; *Griffith v. Adams,* 106 Conn. 19, 137 Atl. 20; *First Nat. Bank of Boston v. Union Hospital of Fall River,* 281 Mass. 64, 183 N. E. 247) is not applicable.

*By the Court.*—Order affirmed.