Woodward Estate.

Argued April 26, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

A. T. *Parke, III,* with him *Parke and Parke,* for appellants.

*Thomas A. Pitt, Jr.,* with him *Stively and Mitman,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, June 28, 1962:

This is an appeal from a decree of distribution and the narrow question involved is the distribution of shares of stock of the American Telephone and Telegraph Company.

Testatrix executed her will on April 10, 1957. In her will she provided:

"I give and bequeath thirty shares of American Telephone and Telegraph stock to Vera Ford Walls.

"I give and bequeath thirty-five shares of American Tel. and Tel. stock to Henry D. Walls."

Testatrix then made many gifts of articles of furniture, china and silverware, including several to Vera Ford Walls. Testatrix provided: "All of the rest, residue and remainder of my estate I give and bequeath unto my following named nephews and nieces—Florence J. Harrison, Florence B. Steeley, Helen B. Dunlap, Clara Byerly Lammey and Charles F. Lammey—in equal shares."

On April 10, 1957, the date of her will, testatrix owned 78 additional shares of stock of the American Telephone and Telegraph Company or a total of 143 shares. On April 24, 1959, the A. T. and T. stock was split three-for-one and the additional shares were issued on May 29, 1959 to stockholders of record of *April 24, 1959.* Testatrix received the additional shares which gave her a total of 429 shares of A. T. and T. stock and owned and possessed them at her death on *June 15, 1960.*

Vera Walls and Henry Walls contended that, contrary to the clear language of testatrix's gift to them

of 30 shares and 35 shares respectively, testatrix intended to give Vera 90 shares and Henry 105 shares of A. T. and T. stock because of the stock split. The Orphans' Court awarded to Vera only 30 shares and to Henry only 35 shares and awarded all the rest of the testatrix's stock of the American Telephone and Telegraph Company to the residuary legatees who were nephews and nieces of testatrix.

It is hornbook law that: "The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157." *Saunders Estate,* 393 Pa. 527, 529, 143 A. 2d 367. See to the same effect *Althouse Estate,* 404 Pa. 412, 172 A. 2d 146.

In order to ascertain the testatrix's intent we must place ourselves in the testatrix's armchair and consider "the entire will . . . in the light of the circumstances surrounding him when he made it: [citing cases]. The attendant circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property: [citing cases]." *Newlin Estate,* 367 Pa. 527, 529, 80 A. 2d 819.

We believe the testatrix's language, meaning and intent are clear. She clearly said at the time she made her will that she wished to give 30 shares to Vera and 35 shares to Henry and she wished her residuary estate to be divided among her five named nephews and nieces. *Two years later,* the A. T. and T. stock was split three-for-one. Testatrix received these additional shares of stock and owned and possessed them *for over*

*a year* before her death, but never changed her will. How can we then change it for her? Moreover, Section 14 of the Wills Act of 1947, P. L. 89, 20 PS §180.14, provides:

"In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

"(1) Wills construed as if executed immediately before death. Every will shall be construed, *with reference to the testator's real and personal estate,*\* to speak and take effect as if it had been executed immediately before the death of the testator."

That language is clear and since we find no contrary intent appearing in the will, the Wills Act refutes the claim of Vera and Henry Walls and supports the claim of the residuary legatees. This was in accord with the prior statutory and decisional law.

Appellants rely on *McFerren Estate,* 365 Pa. 490, 76 A. 2d 759, in which a testatrix owning 100 shares of Cheseborough stock bequeathed 50 shares to one legatee and 50 shares to another legatee, and the Court held that after a subsequent split each of these legatees was entitled to the new number of shares represented by the split. This case involved an ademption, as well as lapsed legacies, general legacies and specific legacies and the Court found that the testatrix intended to bequeath to each legatee *an equal half-share* of the stock which she owned in that corporation at the time she made her will. We have frequently said that no will has a twin brother and the present will is distinguishable from the *McFerren* will because of the difference (a) in the surrounding circumstances and (b) in the language of the wills.

Decree affirmed, each party to pay own costs.

---

\* Italics throughout, ours.