Greathead Estate.

Argued April 24, 1967. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused January 9, 1968.

*Henry Thomas Dolan,* with him *Catello Pizza,* for appellant.

*Paul Maloney,* with him *George M. Kevlin, Robert E. Porter, James R. Ledwith, Melvin G. Levy, David H. W. Dohan,* and *Pepper, Hamilton & Scheetz,* for appellees.

OPINION PER CURIAM, November 28, 1967:

The Court being equally divided, the Order is affirmed, each party to pay own costs.

Mr. Justice COHEN took no part in the consideration or decision of this case.

———

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with the Order of the lower Court and with the Per Curiam decision of this Court, but believe it is advisable to set forth at length the reasons which, beyond any doubt, justify and necessitate an affirmance of the Order of the Orphans' Court.

The question involved is whether a legatee of 200 shares of Smith, Kline & French* stock was entitled to that *exact* number of shares or to 500** shares which resulted from a 3-to-1 stock split, after testatrix had made her will.

This question arose at the audit of the executor's account in the Estate of Alice M. Greathead. The Orphans' Court decided that St. Giles Church, which was

———

\* hereinafter referred to as SKF.

\*\* Reduced because of sales during the testatrix's lifetime.

bequeathed 200 shares of the common stock of SKF was entitled only to 200 shares of this stock and not to an additional 300** shares, which the testatrix had received as a result of the 3-to-1 stock split *after her will was executed but before her incompetency.* From the Court's final Order the Church took this appeal.

In *Houston Estate,* 414 Pa. 579, 201 A. 2d 592, the pertinent principles of law are stated on pages 586-587: "In Lewis Estate, 407 Pa. 518, 180 A. 2d 919, the Court (quoting from Burleigh Estate, 405 Pa. 373, 376, 175 A. 2d 838), recently said (page 520) : ' "It is now hornbook law (1) that the testator's intent is the pole-star and must prevail [if it is not unlawful] ;* and (2) that his intent must be gathered from a considera-tion of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be re-sorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wana-maker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197." '

". . . ' " 'it is not what the Court thinks he might or would or should have said in the existing circum-stances, or even what the Court thinks he meant to say, but what is the meaning of his words.* Kelsey Es-tate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157.' Saunders Estate, 393 Pa. 527, 529, 143 A. 2d 367. See to the same effect Althouse Estate, 404 Pa. 412, 172 A. 2d 146 . . .": Woodward Estate, 407 Pa. 638, 640, 182

---

* *Houston Estate,* page 586.

A. 2d 732.'" (Emphasis in original Opinion.) Accord, *Schappell Estate* and cases cited therein, 424 Pa. 390, 227 A. 2d 651.

Testatrix died August 24, 1964, leaving a will dated April 10, *1956*. At the time she made her will she was seventy-six years old. In the SECOND Paragraph of her will she provided: "I give and bequeath *200 shares of my Smith, Kline & French stock* to . . . St. Giles Church." Could any language be clearer! In the same Paragraph of her will she gave either 200 shares or 100 shares of SKF stock to various relatives of hers and to a number of her friends, fourteen of them in all. These bequests totaled 2,400 shares, which was the total of SKF stock she owned at that time, and it is, as we shall see, principally on this totality that appellant bases its claim that the bequest to it was intended to be *a fraction* of all the SKF stock which the testatrix owned.*

Testatrix had purchased 20 shares of SKF in September, 1937. The stock was split 20-for-1 in 1947, and 2-for-1 in 1950, and 3-for-1 in 1954. It is only reasonable to assume that when she made her will in *1956,* she was familiar with the fact that her holdings of SKF stock had grown tremendously as a result of these stock splits and another stock split was quite possible if not likely. Even more important, on May 29, 1959, over three years after she had made her will and several months before she was declared incompetent, she had received additional SKF stock as a result of another stock split of 3-for-1, thus giving her a total of 6,000 shares at her death (see infra). Yet with all this

---

* This stock had a market value of approximately $53 a share and a total value of approximately $128,000. At that time the testatrix also possessed other stocks and bonds, and also some cash which had a total value in excess of $85,000. At her death her total SKF holdings of 6,000 shares had a value of approximately $364,000, and her gross estate was valued at approximately $589,000.

knowledge, *testatrix never changed her will* with respect to her gift of 200 shares of SKF stock to the Church, or any of her other specific gifts of SKF stock which she had made in the SECOND Paragraph of her will as aforesaid.

Furthermore, between the date of her will and the date when she was declared incompetent, *she bought and sold SKF stock,* and although her holdings varied she never changed her gift to the Church. For example, on August 2, 1956, only a few months after her will was executed, testatrix purchased 35 additional shares of SKF. If she had intended, as appellant claims, to give to appellant and to each SECOND Paragraph legatee a percentage or fraction of her total holdings in SKF stock, *which is contrary to the clear and specific language of her will,* why didn't she change her will during the next two years! In September, *1958,* she sold 400 shares of SKF which then totaled 2,435; and in October, *1958,* she sold an additional 35 shares, leaving her 2,000 shares. This was fewer shares of SKF than she had bequeathed in her will to appellant and to each legatee. If she had intended, as appellant claims, to give to appellant and to each legatee *a percentage or fraction* of her total holdings in SKF stock, *which is contrary to the clear and specific language of her will,* why didn't she change her will at these times? Nevertheless, after August 2, 1956, when her total holdings were more than 2,400 shares and after September, 1958, when her total holdings were less than 2,400 shares, she never changed her bequest to St. Giles Church of 200 shares of SKF stock, nor did she change any of her other bequests of SKF stock which were contained in the SECOND Paragraph of her will.

On September 16, 1959 (approximately three months later), testatrix was admitted to the Institute of the Pennsylvania Hospital, and on November 23, 1959, was declared incompetent and guardians were appointed for

her estate. She never regained her competency prior to her death on August 24, 1964.

In construing the SECOND Paragraph of testatrix's will and analyzing the interpretation which appellant seeks to make, it is important also to consider testatrix's residuary paragraph, which the dissenting Opinion (in practical effect) absolutely ignores. In the SIXTH Paragraph of her will, which was drawn by an attorney, *testatrix divided and bequeathed her residuary estate in equal 1/10 shares to ten named legatees.* Parenthetically, four of the residuary legatees were legatees in the SECOND Paragraph of her will. Of these four, Lena Archer was also a beneficiary under Paragraphs THIRD, FOURTH and FIFTH. Two residuary legatees were spouses of beneficiaries named in the SECOND Paragraph of her will. The remaining four residuary legatees were not mentioned elsewhere in the will.

It seems crystal clear that testatrix knew at the time she made her will (1) that "200 shares of my SKF stock" meant exactly what she said, and (2) that the SKF stock which she then owned had been previously split several times and the number of her shares had increased from 20 shares to 2,400 shares, and therefore another stock split was certainly quite possible, if not likely; and (3) *she knew how to give a fraction or percentage of her stock, instead of the exact number of shares, when she so desired.* The latter is clear and obvious from the residuary paragraph of her will in which, we repeat, she gave to her residuary legatees not a specific number of shares, but to each one of the ten residuary legatees a 1/10 share of her residuary estate. Furthermore, as we have seen, she bought and sold additional shares of SKF stock between the date of her will and her incompetency; and, finally, after all these changes in her holdings of SKF stock, she never changed her gift of 200 shares to St.

Giles Church, as aforesaid. For all these reasons we are convinced that testatrix intended to give the Church *not a fraction or a percentage* of the SKF stock which she owned, but the *exact* number of shares which she clearly and specifically bequeathed to the Church, namely, 200 shares.

While we have frequently said that no will has a twin brother, *Woodward Estate,* 407 Pa. 638, 182 A. 2d 732, not only reiterates the well settled law of Pennsylvania in this class of case but answers most, if not all the contentions made by the appellant. In *Woodward Estate,* the Court in a unanimous Opinion pertinently said (pages 640-641) : "We believe the testatrix's language, meaning and intent are clear. She clearly said at the time she made her will that she wished to give 30 shares to Vera and 35 shares to Henry and she wished her residuary estate to be divided among her five named nephews and nieces. *Two years later,* the A. T. and T. stock was split three-for-one. Testatrix received these additional shares of stock and owned and possessed them for *over a year* before her death, but never changed her will. *How can we then change it for her?* Moreover, Section 14 of the Wills Act of 1947, P. L. 89, 20 PS §180.14, provides :

" 'In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules :

" '(1) Wills construed as if executed immediately before death. Every will shall be construed, *with reference to the testator's real and personal estate,* to speak and take effect as if it had been executed immediately before the death of the testator.'

"That language is clear and since we find no contrary intent appearing in the will, the Wills Act refutes the claim of Vera and Henry Walls and supports the claim of the residuary legatees. This was in accord with the prior statutory and decisional law.

"Appellants rely on McFerren Estate, 365 Pa. 490, 76 A. 2d 759, in which a testatrix owning 100 shares of Cheseborough stock bequeathed 50 shares to one legatee and 50 shares to another legatee, and the Court held that after a subsequent split each of these legatees was entitled to the new number of shares represented by the split. This case involved an ademption, as well as lapsed legacies, general legacies and specific legacies and the Court found that the testatrix intended to bequeath to each legatee *an equal half-share* of the stock which she owned in that corporation at the time she made her will. We have frequently said that no will has a twin brother and the present will is distinguishable from the McFerren will because of the difference (a) in the surrounding circumstances and (b) in the language of the wills."* (Emphasis in Original Opinion.)

To summarize: I believe the language of testatrix's will is so clear that it is incomprehensible to me how it could be construed as the dissenting Opinion has misconstrued and rewritten it.

I would affirm the Order of the lower Court.

Mr. Justice MUSMANNO and Mr. Justice O'BRIEN join in this concurring Opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Alice M. Greathead died August 24, 1964. She left a will signed April 10, 1956. At the time of the execution of her will she owned 2,400 shares of the capital stock of Smith, Kline & French Laboratories. In the second paragraph of her will she bequeathed all of

---

* In *McFerren*, when testatrix executed her will she was the owner of 100 shares of Cheseborough Manufacturing Company, which she divided between two legatees. Moreover, although there was subsequently a recapitalization resulting in a split-up of the stock, *no new shares were purchased and no old shares were sold*. The language of *McFerren* should be restricted to its facts.

these shares in 100 and 200 share lots to fourteen named persons, and 200 shares to her church (the appellant), thus disposing of her entire SKF holdings.

On August 2, 1956, Miss Greathead bought an additional 35 shares of Smith, Kline & French stock; approximately two years later, in September 1958, she sold 400 and in October of that year 35 additional shares were sold, leaving her in possession of 2,000 of the 2,400 shares she bequeathed by her will. On May 29, 1959 SKF stock split 3 for 1, increasing her holdings to 6,000 shares—this stock split did not increase the capital of SKF nor did it affect the total book value of any stockholder's shares. Four months after this stock split Miss Greathead was hospitalized and less than two months later was adjudicated incompetent. The issue here presented is whether appellant-church is entitled to receive the fruits of the stock split, or, as the lower court decided, the additional 4,000 shares pass to the residuary legatees. I believe that the church is so entitled.

The testatrix's fifteen separate gifts of Smith, Kline & French stock correspond precisely to the total number of shares held by her at the date of the execution of the will. To my mind that fact is strongly indicative of an intent to give each of the fifteen legatees the fraction of her holdings in SKF represented by the proportion each bequest bore to her total holdings. I do not see why the failure of testatrix to change the terms of her will in response to a purely formal alteration in the number of those shares by unilateral corporate action should be construed to indicate a change in such intent. Certainly, had SKF stock not split, this would be a simple case of ademption and each legatee under the second paragraph of testatrix's will would be entitled to 5/6 of the number of shares left to him under the will. Corporate action, changing the form but not the substance of testatrix's holdings, should not affect

a testator's intended disposition. Furthermore, if SKF management had, instead of a stock split, undertaken what is commonly called a reverse stock-split (e.g., an exchange of three old shares for one new one), each legatee would surely still be entitled to have his bequest satisfied with these new shares. The result should be identical whether corporate action results in an increase or decrease in the number of shares held by a decedent.

The import of testatrix's failure to respond to the stock split seems especially devoid of any significance when it is recalled that the testatrix was adjudicated an incompetent only six months after the split. Moreover, the disposition of the lower court (now affirmed by an equally divided Court), which has the effect of distributing SKF shares to residuary legatees, seems to run contrary to testatrix's intent, since under the testatrix's scheme of distribution viewed from the date of the execution of her will her SKF stock was to be left solely to legatees of specific bequests.

There is an additional and perhaps more compelling reason to reject the court's decision. Each of the fifteen bequests of SKF stock are phrased as follows: "I give and bequeath [x number] shares of *my* Smith, Kline & French stock, to . . . ." (Emphasis supplied.) A bequest of stock qualified by the testator by use of the word "my" is clearly a specific bequest under Pennsylvania law, *Horn's Estate,* 317 Pa. 49, 175 Atl. 414 (1934); *Klenke's Estate (No. 2),* 210 Pa. 575, 60 Atl. 167 (1905) (per curiam). A specific bequest is subject to ademption if the subject of the bequest is not among the assets of the estate at the date of testator's death because the absence of the subject from the estate is presumed indicative of action by the testator exhibiting testamentary intent contrary to that expressed by the literal language of his will. See *Will of Hinners,* 216 Wisc. 294, 257 N.W. 148, 150 (1934). Where,

however, a unilateral action beyond the control of the testator changes the form, but not the substance, of the subject of a specific bequest, the reason for and consequently the rule of ademption fail, see ibid. In effect, today's decision disregards this fact and works a partial ademption of the bequest to appellant.

Although there appears to be no appellate authority on this precise question in Pennsylvania,* the appellate courts of many other states have rejected attempts to enforce a partial ademption in such circumstances. See *Fidelity Title & Trust Co. v. Young,* 101 Conn. 359, 125 Atl. 871 (1924); *Heinneman v. Colorado College,* 150 Colo. 515, 374 P. 2d 695 (1962); *Butler v. Dobbins,* 142 Me. 383, 53 A. 2d 270 (1947); *Igoe v. Darby,* 343 Mass. 145, 177 N.E. 2d 676 (1961); *Morrow v. Detroit Trust Co.,* 330 Mich. 635, 48 N.W. 2d 136 (1951); *Shriners Hospitals v. Emrie,* 347 S.W. 2d 198 (Mo. 1961); *Griffing Will,* 11 App. Div. 2d 709, 204 N.Y.S. 2d 850 (1960), aff'd per curiam, 9 N.Y. 2d 919, 176 N.E. 2d 99, 217 N.Y.S. 2d 90 (1961); *Will of Hinners,* 216 Wisc. 294, 257 N.W. 148 (1934). Indeed in each of the above cited cases it was held that the legatee of

---

* In *Rempp Estate,* 33 Pa. D. & C. 2d 426 (O.C. Montgomery County, Pa. 1964) the court held that the legatee of a specific bequest was entitled to the benefit of a stock split which increased the number of testator's shares between the date of the execution of the will and the date of death. See also *Watson Estate,* 55 Luzerne L.R. 55 (O.C. Luzerne County, Pa. 1964) (legatee of specific bequest entitled to increase in number of shares resulting from a split after death but before distribution). In *Carlson Estate,* 78 Pa. D. & C. 571 (O.C. Erie County, Pa. 1951) the court held that legatees of a specific bequest of stock were not entitled to stock dividends declared upon the subject of the bequest between the date of the execution of the will and the date of death, but called attention to the difference between a stock dividend and a stock split. It should also be noted that neither *Woodward Estate,* 407 Pa. 638, 182 A. 2d 732 (1962) nor *McFerren Estate,* 365 Pa. 490, 76 A. 2d 759 (1950), relied upon by the appellee, involved bequests which were specific.

a specific bequest of stock is entitled to an increase in the number of shares resulting from a split occurring before the testator's death. Thus today's decision not only reaches an unwarranted conclusion, but also ignores the overwhelming weight of persuasive authority.

Finally, it should be noted that the appellee's reliance on the holding in *Woodward Estate,* 407 Pa. 638, 182 A. 2d 732 (1962) is misplaced. *Woodward* is distinguishable from the instant appeal in any event because the bequest in *Woodward* was not a specific one. Equally important, *Woodward's* testatrix's bequests of 30 and 35 shares were made at a time when she held 143 shares of the stock involved. Such a circumstance is not nearly as suggestive of an intent to give her legatees a proportionate share of her holdings in a company as the instant testatrix's bequests of nine-200 share and six-100 share bequests comprising her entire holdings of SKF at the time of the execution of the will.

Accordingly, I would reverse.

Mr. Justice JONES and Mr. Justice EAGEN join in this dissenting opinion.