**Tigue Estate**

*Robert A. Robinson,* for accountant.

PENETAR, J., February 27, 1973.—The first and final account of Florence M. Toole, executrix of the estate of Eugene M. Tigue, deceased, after due publication in accordance with law and the rules of court, was called for audit on Tuesday, November 21, 1972, at 10 a.m., and after proceedings therein and the presentation of briefs by counsel, together with a stipulation of facts, the audit was duly closed on December 21, 1972.

From the petition for distribution the account and the proceedings at audit, we find the following facts:

1. The balance for distribution, appearing by the first and final account filed, amounts to $34,538.75, consisting of:

Income Cash ............$ 1,179.75
605 shares Penn Security
 Bank and Trust Co.; com-
 mon stock ............ 32,275.00
300 shares First National
 Uranium Mines, Ltd.,
 common O.T.C., Par 1,
 @ 28c ................ 84.00

2. Decedent, Eugene M. Tigue, died May 3, 1971, testate, leaving neither spouse nor issue to survive him, survived however by collateral kin.

3. Letters testamentary on his estate were granted to Florence M. Toole on May 6, 1971.

4. Notice of the granting of letters testamentary has been advertised as provided for by law.

5. The last will and testament of decedent, dated July 7, 1965, was admitted to probate in the office of the Register of Wills in and for Lackawanna County

on May 6, 1971, and was duly entered of record in said office in Will Book 139, at pages 35 through 40, inclusive.

6. The last will and testament of decedent contains, inter alia, the following pertinent provisions:

"1. I give and bequeath all of my household furniture and furnishings, all clothing, jewelry, rings, watch, cuff links and any and all personal items contained in my property situate at 925 Green Ridge Street, Scranton, Pennsylvania, to my sisters, Florence M. Toole and Alice M. Connor to dispose of as they see fit. I have disposed of some of the furniture and what is left including personal items such as clothing, jewelry I consider as having no resale value only sentimental value and ask that any items with sentimental value jewelry such as watch, ring (birthstone Emerald) and cuff links be distributed among my Nephews and Nieces if they so desire and as they see fit.

"2. I give, devise and bequeath my property known as 925 Green Ridge Street, Scranton, Pennsylvania, to my sister Florence M. Toole, Allentown, Pennsylvania, and to my sister Alice M. Connor, Atlanta, Georgia, to be shared equally by said Florence M. Toole and Alice M. Connor. I request that they dispose of said property as soon as they may conveniently do so.

"3. I give and bequeath (25) Twenty Five shares of Common Stock of the South Side Bank and Trust Company, Scranton, Pennsylvania, to my sister Agnes C. Fonzo, Route 145, Catskills Mountains, New York.

"4. I give and bequeath (25) Twenty Five shares of Commonwealth Stock of the South Side Bank and Trust Company, Scranton, Pennsylvania, to my brother Walter P. Tigue, Costa Mesas, California.

"5. I give and bequeath (28) Twenty Eight shares of Common Stock of the South Side Bank and Trust Company, Scranton, Pennsylvania to my sister Alice

M. Connor, 4035 Navajo Trail N. E., Atlanta, Georgia.

"6. I give and bequeath (28) Twenty Eight shares of Common Stock of the South Side Bank and Trust Company, Scranton, Pennsylvania to my sister Florence M. Toole, 1215 No. 15th Street, Allentown, Pennsylvania. . . .

"8. All the rest, residue and remainder of my estate, real personal and mixed and wheresoever that same may be situate I give, devise and bequeath to my Sisters Florence M. Toole and Alice M. Connor."

7. Credit was taken by the accountant in the first and final account for the following risk distributions:

| | | |
|---|---:|---:|
| Real estate situate at 925 Green Ridge Street, Scranton, Pa. | $6,700.00 | |
| Automobile, 2 door Ford, L.T.D. 1970 | 2,650.00 | |
| Household furniture and personal effects | 94.00 | |
| Collection of Coins | 56.20 | |
| Longines Wrist Watch | 5.00 | |
| Ring | 2.00 | |
| Cuff Links | 1.00 | $9,508.20 |

Said risk distribution having been made in accordance with Item 1 of the last will and testament of decedent to his sisters, Alice M. Connor and Florence M. Toole.

8. At the audit of the first and final account of Florence M. Toole, executrix of the estate of Eugene M. Tigue, deceased, certain objections were made by John Fonzo and Eugene Fonzo, children of Agnes Fonzo, a named legatee in the will of the decedent, and in the petition for distribution, it is mentioned that certain paragraphs in the will require interpretation. Counsel for the parties agreed to submit a stipulation of the facts and briefs, and upon such submissions, the court determines the following:

Eugene M. Tigue died May 3, 1971. He left his handwritten will and codicil dated July 7, 1965. On the date of the will, he was the owner of 108 shares of common stock of the South Side Bank and Trust Company, Scranton, Pennsylvania. *In Paragraph Three of his will, he bequeathed 25 shares of common stock of the South Side Bank and Trust Company to his sister, Agnes C. Fonzo;* in Paragraph Four he made a similar bequest to his brother, Walter P. Tigue; in Paragraph Five he bequeathed 28 shares of the same stock to his sister, Alice M. Connor; and in Paragraph Six he made a similar bequest to his sister, Florence M. Toole. Accountant, in her petition for distribution, avers that "these paragraphs require interpretation. At date of Will, July 7, 1965, decedent owned one hundred eight (108) shares of common stock of South Side Bank and Trust Company (Now Penn Security Bank and Trust Company), Scranton, Pa. After execution of the Will, he purchased thirteen (13) additional shares of such stock, the certificates for three (3) of such shares, Number 3923, is dated March 28, 1966, and the certificate for the other ten (10) of such shares, Number 4399, is dated April 16, 1968. On January 5, 1970, South Side Bank and Trust Company common stock was split two and one-half (2½) shares for one (1) and a one hundred (100%) per cent stock dividend was distributed (together equal to a five for one split) and decedent received four hundred eighty-four (484) additional shares, at which time, and until his death, he was the owner of six hundred five (605) shares of such common stock. Interpretation of such paragraphs of the Will is ·necessary to determine whether the legatees under such paragraphs are entitled to additional shares based on the shares received by the decedent resulting from the January 5, 1970 distributions by South Side Bank and Trust Company, or whether such additional shares pass as part of the residue."

The South Side Bank and Trust Company stock held by decedent on date of his will was accumulated by a series of 18 purchases in odd lots from one to 10, beginning on February 9, 1929, and ending on August 24, 1964. After execution of his will, decedent acquired three additional shares of the bank stock on March 28, 1966 and 10 additional shares of the bank stock on April 16, 1968. Any facts adverted to by the court in this opinion are taken from the facts stipulated by counsel for the estate and counsel for John and Eugene Fonzo, children of Agnes L. Fonzo, who died intestate, July 24, 1969.

Counsel for the estate maintains the increased number of shares of the South Side Bank and Trust Company stock resulting from the stock split and dividends, subsequent to decedent's will, but prior to his death, should pass under the residuary clause of decedent's will. Counsel for the children of Agnes L. Fonzo, deceased, legatee of 25 shares, argues forcefully that her clients are entitled to 125 shares, since the additional shares should be apportioned among the legatees of such stock. The leading cases on the issue before this court are McFerren Estate, 365 Pa. 490; Woodward Estate, 407 Pa. 638; Greathead Estate, 428 Pa. 553; and Marks Estate, 435 Pa. 155.

In Woodward Estate, supra, testatrix executed her will on April 10, 1957, in which she gave 30 shares of AT&T stock to Vera Ford Walls and 35 shares of the same stock to Henry D. Walls. The residue of her estate went to several nephews and nieces. On the date of her will, she owned a total of 143 shares. On April 24, 1959, the AT&T stock was split three for one, giving testatrix a total of 429 shares owned by her on the date of her death, June 15, 1960. The court here held Vera Ford Walls and Henry D. Walls were entitled only to the specific number of shares given in the will, and that the residuary legatees were entitled

to the remaining 364 shares. Even Mr. Justice Roberts, in his dissenting opinion in Greathead Estate, supra, concurred in by Mr. Justice Jones (now Mr. Chief Justice Jones) and Mr. Justice Eagen, has no quarrel with this conclusion, for as he states in his decision, at page 564:

"Finally, it should be noted that the appellee's reliance on the holding in Woodward Estate [supra], is misplaced. Woodward is distinguishable from the instant appeal in any event because the bequest in Woodward was not a specific one. Equally important, Woodward's testatrix's bequests of 30 and 35 shares were made at a time when she held 143 shares of the stock involved. Such a circumstance is not nearly as suggestive of an intent to give her legatees a proportionate share of her holdings in a company as the instant testatrix's bequests of nine-200 share and six-100 share bequests comprising her entire holdings of SKF at the time of the execution of the will."

It is appropriate to quote from the opinion of Mr. Chief Justice Bell in Greathead Estate, supra, page 555:

"In Houston Estate . . . the pertinent principles of law are stated on pages 586-587: 'In Lewis Estate . . . the Court . . . recently said: . . . " 'It is now hornbook law (1) that the testator's intent . . . must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain.' "

" '. . . " ' " *it is not what the Court thinks he might or would or should have said in the existing circumstances*, or even what the Court thinks he meant to say, but *what is the meaning of his words*." ' " ' "

And at page 559, in the same case, Mr. Chief Justice Bell said:

"While we have frequently said that no will has a twin brother, Woodward Estate . . . not only reiterates the well settled law of Pennsylvania in this class of case but answers most, if not all the contentions made by the appellant. In Woodward Estate, the Court in a unanimous Opinion pertinently said (pages 640-641): 'We believe the testatrix's language, meaning and intent are clear. She clearly said at the time she made her will that she wished to give 30 shares to Vera and 35 shares to Henry and she wished her residuary estate to be divided among her five named nephews and nieces. Two years later, the A. T. & T. stock was split three-for-one. Testatrix received these additional shares of stock and owned and possessed them for over a year before her death, but never changed her will. How can we then change it for her? Moreover, section 14 of the Wills Act of 1947, P. L. 89, 20 PS section 180.14, provides:

" ' "In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

" ' "(1) Wills construed as if executed immediately before death. Every will shall be construed, with reference to the testator's real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator." ' "

" 'That language is clear and since we find no contrary intent appearing in the will, the Wills Act refutes the claim of Vera and Henry Walls and supports the claim of the residuary legatees. This was in accord with the prior statutory and decisional law.' "

It is not arguable, under all of the cases, supra, that decedent's intent must prevail. Since both sides agree that decedent made general bequests of his bank stock, it becomes unnecessary to discuss that classification

further. In all cases, "[T]he intent of the testator governs concerning the identity or value of the legacy. This is governed by the words of the will in relation to the surrounding circumstances." See McFerren Estate, supra, at page 496. And, to ascertain intent, the court should look at the surrounding circumstances which include the condition of the family, the natural objects of his bounty and the amount and character of his property. See Woodward Estate, supra. In the matter before the court, decedent had four sisters and two brothers on the date of his will. Eleanor Rasmussen and Frank Tigue, sister and brother to decedent, were not given anything in the will, and testator wrote, "in my opinion, they do not need any help from me." Testator knew whom he wanted to benefit. It is significant that in Paragraph Eight of the will, the remainder of his estate was given to his sisters, Florence M. Toole and Alice M. Connor, which would cover the two additional shares in existence on the date of the will. His sister, Florence M. Toole, was named executrix and in the event of her death, her sister, Alice M. Connor, was to become executrix. They were also named beneficiaries of a $20,000 Equitable Life Assurance Group Policy on May 7, 1963; a $5,870.86 Penn Security Bank and Trust Company checking account was in the name of Eugene M. Tigue or Florence M. Toole; a $15,831.56 balance was in a savings account at Penn Security in the name of Eugene M. Tigue for Florence M. Toole and Alice M. Connor, created on December 21, 1962, and $11,399.74 was in a Penn Security profit-sharing plan and the beneficiaries named by decedent on October 7, 1969, were Florence M. Toole and Alice M. Connor.

When he executed his will, decedent was assistant trust officer and assistant cashier of the bank, and in January 1970, he was elevated to the position of cashier, which he held until date of his death. If Eugene

Tigue wanted to change his will after the stock split on January 5, 1970, he would have done so. He was knowledgeable and his holographic will was meticulously and clearly drawn. To paraphrase Mr. Chief Justice Bell in Greathead Estate, supra, at page 559, testator received these additional shares of stock and owned and possessed them for a year and four months before his death, but never changed his will. How can we change it for him?

Moreover, section 14 of the Wills Act of April 24, 1947, P. L. 89, 18 PS §180.14, now 20 Pa. S. §2514, supra, supports the claim of the residuary legatees; and the Fonzo claim must be rejected because they simply have not shown that a contrary intent appears. It is the opinion of this court and we do so hold, as a matter of law, that in the light of the facts and circumstances of this case, the legatees take only the number of shares given in Paragraphs 3, 4, 5 and 6 of the will, and that the additional shares produced by the stock split and dividends which occurred subsequent to the execution of testator's will and prior to his death, pass to the residuary legatees.

We find as a matter of law that the dividends paid on the stock during the year following decedent's death fall into the residue of the estate. After expiration of a year, they belong to the legatees. See Dunlevy Estate, 51 Pitts. 331. See also, Watson Estate (Luz.), 15 Fid. Rep. 120, 123.

It is, therefore, ordered and decreed that Florence M. Toole will make distribution in accordance with the foregoing conclusions.

9. Every unpaid claimant who has given notice of his claim to the accountant or her attorney of record, and every other person known to the accountant to have an interest in the estate as beneficiary, heir or next of kin, have had written notice of the filing of the account and of its call for audit.

10. The estate was subject to the payment of a transfer tax to the Commonwealth of Pennsylvania, which tax has been paid.

11. The first and final account of the accountant was confirmed nisi on November 6, 1972, and is hereby confirmed finally.

And now, February 27, 1973, this adjudication is confirmed nisi.