MORROW v. DETROIT TRUST COMPANY.

1. WILLS—CONSTRUCTION—BEQUEST TO WIDOW.

Testator *held*, primarily concerned in planning a life income for his wife, where will provided that she was to have a minimum of $500 per month during her lifetime, an amount which could be increased in the discretion of the executor or trustee, she was to have a rent-free life estate in their home and was given all of his household goods, books, and pictures absolutely, in suit for construction of bequest to testator's sister.

2. SAME—OPERATION—EXECUTION—SUBSEQUENT EVENTS.

A will is not operative until the death of the maker, but speaks the intention of the testator as of the time of its execution, not being varied by events subsequent to its execution.

3. SAME—CONSTRUCTION—INTENT.

The cardinal principle to be observed in construing a will is to reach the testator's intention as disclosed by the instrument and to give effect to the whole, so far as the wording will permit and is consistent with existing laws.

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills, §§ 1166, 1167.
[2] 57 Am Jur, Wills, § 1209.
[3] 57 Am Jur, Wills, §§ 1133, 1134, 1136.
[4] 57 Am Jur, Wills, §§ 1040, 1124.
[5] 57 Am Jur, Wills, §§ 625, 1209
[6] 57 Am Jur, Wills, § 1405.
[7] 57 Am Jur, Wills, § 1402.
[8] 57 Am Jur, Wills, § 1401.
[6, 9] When legacy is regarded as demonstrative. 6 ALR 1353; 73 ALR 1250.
[9] 57 Am Jur, Wills, § 1403.
[10] 57 Am Jur, Wills, § 1411.
[10] Change in stock or corporate structure, or substitution of stock by corporation, as affecting bequest of stock. 7 ALR2d 268, 276.

4. SAME—CONSTRUCTION—AMBIGUITY.

> Interpretation of a will ends by consulting the document if its terms are clear and unambiguous, but if they are not, the uncertain words and phrases used are weighed and interpreted in the light of pertinent surrounding facts and circumstances which may tend to indicate what the testator had in mind at the time he used them.

5. SAME—PARTIAL REVOCATION—REPUBLICATION—CONSTRUCTION.

> Testator's revocation of one of several trusts does not effect a republication of his will as of the date of such partial revocation nor affect the rule that the intention of the testator as of the time the will is made must be ascertained.

6. SAME—SPECIFIC LEGACY—DEMONSTRATIVE LEGACY.

> Determination as to whether a legacy is specific, general or demonstrative is made from an examination of the entire instrument and circumstances surrounding the testator at the time of its execution, not merely from the language of the bequest.

7. SAME—GENERAL LEGACY.

> A general legacy is one which is payable out of the general assets of the testator's estate.

8. SAME—SPECIFIC LEGACY.

> A legacy is specific when it is the testator's intention that the legatee shall have the very thing bequeathed and not a corresponding amount in value.

9. SAME—DEMONSTRATIVE LEGACY—GENERAL LEGACY—SPECIFIC LEGACY.

> A demonstrative legacy partakes of the nature of both a general and a specific legacy, since it is a gift of money out of a particular fund in such a way as to evince the testator's intent not to relieve his general estate from payment of the legacy in case the particular fund fails.

10. SAME—TRUSTS—STOCK—SPECIFIC LEGACY—SUBSEQUENT REDUCTION OF PAR VALUE.

> Bequest in trust for testator's sister of stock of the par value of $25,000 which represented 250 shares of stock in corporation in which testator was an officer and which represented approximately 10% of his assets, constituted a specific legacy in trust and was not affected by subsequent corporate action in reducing par value of stock.

Appeal from Wayne; Fitzgerald (Frank) J. Submitted May 7, 1951. (Docket No. 18, Calendar No. 45,046.) Decided June 4, 1951.

In the matter of the estate of Henry Otis, deceased. Detroit Trust Company, executor and trustee, filed its fifth and final account asking for construction of will. Order entered in probate court construing will as requested. Alice Otis Morrow, plaintiff, objector, appealed to circuit court. Order of probate court affirmed. Plaintiff appeals. Affirmed.

*Iverson & Allin,* for plaintiff.

*Voorhies, Long, Ryan & McNair* (*Paul Franseth,* of counsel), for defendant Detroit Trust Company.

*Wendell Brown,* for defendant Otis.

Sharpe, J. This case involves an appeal from an order of the circuit court of Wayne county affirming an order of the probate court construing article 9 (b) of the will of Henry Otis.

The facts have been stipulated and are not in dispute. Henry Otis died September 29, 1940. His will was admitted to probate by the probate court of Wayne county on November 14, 1940. The Detroit Trust Company was appointed successor executor and trustee under the will.

Article 9 of the will provides in part:

"I give, devise and bequeath to my executor and trustee hereinafter named, and his or its successors in trust, all the rest, residue and remainder of my property * * * to have and to hold the said rest, residue and remainder upon and for the following trusts and purposes, that is to say: Upon trust, to hold, invest and keep the same invested; * * * to use, disburse and pay out and dispose

of said income and to dispose of, divide, distribute, transfer, convey, deliver and pay out the principal thereof as follows: * * *

"(b) I direct that my executor and trustee shall set apart and hold as upon a separate trust shares aggregating a total par or face value of $25,000 of the common capital stock of the Detroit Lumber Company, a Michigan corporation, and that my said executor and trustee shall, beginning 1 year after the date of my death, pay to my sister, Alice Otis Morrow, so long as she may live, all cash dividends thereafter declared and paid upon said stock or, in the event said stock shall be sold, all the income received from the proceeds of the sale thereof. Any cash dividends received upon said stock within 1 year after the date of my death shall be considered and treated as part of the income from my general estate. * * * In the event I dispose of my stock holdings in the said Detroit Lumber Company prior to my death, then and in such event I direct my said executor and trustee to set apart and for the trust fund in this subparagraph 'b' created other personal property or cash, of his or its selection, of the value of $25,000 that I may die seized or possessed of and distribute and pay out the income therefrom and the principal thereof as hereinabove in this subparagraph 'b' directed."

The will was executed August 23, 1930, at which time Mr. Otis owned 3,067 shares of stock in the Detroit Lumber Company which had a par value of $100 per share. The will recites that testator had been an officer of the company for many years. It appears that on December 9, 1938, at a special meeting of stockholders, the corporation by resolution adopted by a majority vote amended its articles of incorporation to decrease its authorized capital by one-half by leaving the number of shares as before, but decreasing the par value of each share from $100 to $50; and that the old stock certificates were impressed with a stamp setting forth that the par

value was reduced to $50 per share. Testator owned 2,237 shares of Detroit Lumber Company stock when he died, 1,533 of which had been purchased prior to August 23, 1930, the date the will was executed.

The trust company, as successor executor, filed with the probate court its fifth and final account and asked that the court interpret article 9 (b.) of the will and determine whether the deceased intended that 250 shares or 500 shares of the Detroit Lumber Company stock be set apart in the trust for the life of Alice Otis Morrow, sister of decedent.

The will also provided:

"9 * * * (c) I direct that my executor and trustee shall pay to my wife, Alice Green Otis, so long as she may live the sum of $500 per month out of the income from and/or the principal of said rest, residue and remainder of my estate and, if and in the event, after paying and providing for the expenses in connection with my dwelling house, hereinabove in subparagraph 'a' of this section 9 directed to be paid, the net income from said rest, residue and remainder of my estate shall, during any calendar year exceed the sum of $6,000, then and in such event I direct that my executor and trustee shall also at the end of each year pay to my wife, Alice Green Otis, so long as she may live all net income from said rest, residue and remainder of my estate in excess of said sum of $6,000 per year, hereinabove directed to be paid, it being my intent that my wife shall have and receive all of the net income from said rest, residue and remainder of my estate so long as she may live, and that in the event that such net income does not during any year amount to as much as $6,000 the difference between the income realized during the year and the sum of $6,000 shall be paid to her out of the principal. * * *

"10. Should the income from my estate hereinabove directed to be paid to my wife, Alice Green Otis, be at any time, in the absolute and uncontrolled judgment and discretion of my executor and trustee,

in whichever capacity he or it may for the time being be acting not sufficient to provide for the reasonable needs and comforts and proper support and care of my wife, Alice Green Otis, my said executor and trustee is hereby authorized and empowered to pay to my wife or for her use and benefit out of the principal of the trust hereinabove created for her such additional sums as may in his or its judgment from time to time be necessary to provide for the proper support of my wife, Alice Green Otis."

Upon appeal from the probate court, the cause came on for trial in the circuit court. The court determined that the subject matter of the trust provided for under article 9 (b) of the will is 250 shares of stock of the Detroit Lumber Company. In an opinion filed, the court stated:

"The court, placing itself then, in the position in which the testator was in August, 1930, must attempt to ascertain the intention of the testator from the language used in the entire will, in the light of the surrounding circumstances, known to him, and with reference thereto.

"The first thing to be considered is what the testator intended to do with reference to the means at hand with which to accomplish such purpose. From a study of the entire will, one cannot escape the conclusion that, nearly to a point of anxiety, he was primarily concerned with the giving of a life income to the first and foremost natural object of his bounty, his wife. This income was to come from the trust to be created from the residue of his estate. She was to receive all of the net income derived from such trust, and if the trust failed to earn at least $6,000 per year, sufficient of the assets in the trust were to be sold to pay her a minimum of $6,000 per year at the rate of $500 per month. It is interesting to note that the only provision in the will preventing the sale of all the assets in the estate to accomplish this purpose is the provision (article 9 [b]), creating the trust to provide a much lesser income for

the next natural object of his bounty, his sister, Alice Otis Morrow. The court is mindful that, at the time, the testator was creating trusts to provide like incomes for the 2 closest objects of his affection. Hence, when he used the language, 'shares aggregating a total par or face value of $25,000,' he was thinking, not of the value of such shares primarily, but of the income-producing ability of such shares. This is borne out by the language used in the remainder of the article in question—specifically, 'in the event said stock shall be sold, all the income received from the proceeds of the sale;' 'any cash dividends received upon said stock within a year of my death shall be treated as part of the income of my general estate;' 'In the event my sister does not survive me or, my wife, the income from the trust created in this subparagraph "b".' And he concluded the article with a provision to pay his sister the income from $25,000 in the event the stock was sold prior to his death.

"The testator's bequests to others than those mentioned heretofore shows that, at the time of the execution of the will, he believed his net worth to be well in excess of $250,000. The major portion of his holdings at the time consisted of 3,069 shares of the capital stock in question. Obviously he believed these shares to be worth more than their par or face value. As president of the corporation, he was conversant with the earning capacity of such shares. Consequently, it is reasonable and plausible to infer that when assigning these shares to the trust created in subparagraph (b), the words used were words of description and identification of a specific number of shares assigned to such trust, namely, the number of 'shares aggregating a total par or face value of $25,000, or exactly 250 shares.

"After arriving at the conclusion that it was the intention of the testator to assign 250 shares only to the trust created for the benefit of the appellant, Alice Otis Morrow, there is little or no room for the argument that the corporate action taken December

9, 1938, reducing the par value of the stock to $50 per share, without changing the number of shares owned by the shareholders, affected the number of shares of the stock assigned to the trust under consideration."

Plaintiff appeals and urges that the court erred in holding that testator was primarily concerned in planning a life income for his wife. We are not in accord with this claim. In addition to the income provided in section 9 (c), quoted above, section 2 of the will gave his wife and now widow all of his household goods, books, pictures, et cetera, absolutely; and section 3 of the will gave her a rent-free life estate in the home occupied by testator and wife.

In our opinion it clearly appears that testator fully intended that his wife should be the principal beneficiary of his estate regardless of whether the same exceeded or fell shy of the $250,000 referred to in the will. We note the will contained certain bequests predicated upon the condition that testator's assets at the time of his death had a value in excess of $250,000, but that 9 years later 1 of these bequests was expressly revoked, possibly due to the decrease in value of his assets compared to their value in 1930. We also note that this bequest was revoked approximately 6 weeks after the corporation reduced the par value of its stock from $100 to $50 per share.

The only question in this case is the construction to be placed on article 9 (b) of the will. In construing the above article, we have in mind that a will is not operative until the death of the maker, but speaks the intentions of the testator as of the time of its execution, see *In re Mandelle's Estate,* 252 Mich 375; *Hankey* v. *French,* 281 Mich 454; and that the construction of a will should not be varied by events subsequent to its execution, see *Serrill* v. *Oxtoby,* 191 Mich 10.

In *Re McLennan's Estate,* 179 Mich 595, we said:

"In construing a will, the cardinal principle is to reach the testator's intentions as disclosed by the instrument, and to give effect to the whole, so far as the wording will permit, and is consistent with existing laws. To that end the document itself is first consulted, and, if its terms, in the connection used, are clear and unambiguous, the inquiry ends; if not, the uncertain words and phrases used are weighed and interpreted in the light of pertinent surrounding facts and circumstances which may tend to indicate what the testator had in mind at the time."

It appears that on January 18, 1939, testator revoked part of his will relative to a trust for St. Peter's Episcopal Church. Plaintiff urges that such action shows a republication of testator's will as of that date. We are not in accord with this view. Such revocation does not constitute a codicil to the will. It is simply a revocation of a part of the will as of that date. It does not affect the rule that the intention of the testator as of the time the will is made must be ascertained.

Plaintiff urges that under the authority of *Kinney* v. *Kinney,* 34 Mich 250, and the great weight of authority throughout the country, it must be assumed that the testator herein made his will with the knowledge that his pecuniary circumstances might not remain unchanged in the future; that the clearly expressed wish of the testator that the plaintiff receive the income from a $25,000 fund must be given effect; that shares of the Detroit Lumber Company stock aggregating a total par or face value of said amount, being 500 shares thereof, should be set apart in trust for plaintiff; and that the bequest in trust is a "demonstrative bequest." Defendant Alice Green Otis urges that the bequest in question is "specific;" and that it allocated 250 shares of stock in the Detroit Lumber Company to the trust created in favor of plaintiff, Alice Otis Morrow.

In *Re Mandelle's Estate, supra,* we had occasion to consider the characteristics of a specific legacy, and there quoted with approval from *Burnett* v. *Heinrichs,* 95 NJ Eq 112 (122 A 681), as follows:

"But the language of the bequest is not controlling. The entire instrument is to be examined, and if, upon the whole, it clearly appears that the testator intended to dispose of *his* stock, the legacy will be regarded as specific. If in the clause the testator had referred to the stock as 'my' or 'now in my possession' or 'now owned by me,' or like words of identification, the bequest would have been specific according to all accepted authority. And if similar expressions are found in the rest of the will, referable to and inclusive of the bequest, it is specific."

Rules for the determination of the nature of legacies are found in 57 Am Jur, pp 939, 940, § 1405:

"The modern authorities are in general agreement that the nature of a legacy as specific, general, or demonstrative is to be determined in accordance with the intention of the testator, which is to be gathered not merely from the language of those clauses establishing the particular gift in question alone, but from the will as a whole, and the circumstances surrounding the testator at the time of its execution."

In *Hanley* v. *Fernell,* 54 RI 84 (170 A 88), the court said:

"A 'general legacy' is one which is payable out of the general assets of the testator. A legacy is 'specific' when it is the testator's intention that the legatee shall have the very thing bequeathed and not a corresponding amount in value. A 'demonstrative legacy' partakes of the nature of both a general and a specific legacy. It is a gift of money payable out of a particular fund in such a way as to evince the testator's intent not to relieve his general estate from payment of the legacy in case the particular

fund fails. The distinction between demonstrative legacies and specific legacies is that in the former the primary intention is that the legacy be paid in any event, even though the designated source fails, while in the latter the main intention is that the legacy be paid by the delivery of the identical thing, and that thing only, and in the event that at the time of the testator's death such thing is no longer in existence, the legacy will not be paid out of his general assets. *Lewis* v. *Douglass,* 14 RI 604; *Dean* v. *Rounds,* 18 RI 436 (27 A 515, 28 A 802); *Gardner* v. *Viall,* 36 RI 436 (90 A 760); 28 RCL, pp 289–292; 40 Cyc 1870; 73 ALR 1252. In determining whether a legacy is specific or demonstrative, the intention of the testator is of primary importance, and in ascertaining his intent the court may consider not only the particular bequest in question, but the language of the entire will, together with the circumstances surrounding the testator at the time it was executed, including his relation to the legatees. *Gardner* v. *Viall, supra; Sherman* v. *Riley,* 43 RI 202 (110 A 629); *Connly* v. *McElroy,* 46 RI 93 (125 A 206); 28 RCL, p 293; 40 Cyc 1871."

In 4 Page on Wills (3d ed), it is said:

"A specific legacy is a gift of a specific thing, or of some particular portion of the testator's estate, which is so described by the testator's will as to distinguish it from other articles of the same general nature. A specific legacy differs from a general legacy in that it is not intended by testator to be paid out of his estate generally, but is to be paid solely by delivering to the beneficiary the specific thing given by will, as distinguished from a designated value, quantity, and the like." pp 112, 113, § 1394.

"Under a testament which gives stocks, bonds, or other securities up to a given value, or of a given amount, it is frequently difficult to determine whether the gift is general, specific, or demonstrative.

The entire will must be used to determine testator's intention; and occasionally, different courts have reached different results in construing words which seem practically identical.

"The general rule is that if it appears from the entire will that the testator intends to pass particular stocks, bonds, or other securities which he has described with sufficient certainty, the gift is specific; if the provision amounts, in effect, to a direction to the executor to buy such a number of such stocks, bonds or other securities out of his estate generally, the gift is general; while if the provision, in effect, directs the executors to procure securities in question out of the estate generally, but charges the gift upon some particular fund or property, such as testator's securities which correspond to the description in the will, the gift is demonstrative." p 122, § 1397.

It clearly appears that at the date of the execution of the will, testator's wife was made the principal beneficiary; that at that time, testator had in mind that his estate might exceed $250,000; that at that time the par value of the stock in question was $100 per share; that 250 shares of such stock had a par value of $25,000 and also represented approximately 10% of his assets; and that at that time he was the owner of 3,067 shares of such stock.

In the case at bar the bequest in trust was of stock of a par value of $25,000 which represented 250 shares of stock of the Detroit Lumber Company. No pecuniary gift was intended. The provision for the contingency of ademption indicates that testator intended to make a specific bequest in trust. In our opinion testator intended to set up a trust for his sister of 250 shares of stock in the Detroit Lumber Company. As to a specific bequest, the will speaks as of the time of its execution. The subsequent corporate action of reducing the par value of the stock did not affect the bequest. Under the reduced par

value of the stock, plaintiff will still receive the earnings on approximately 10% of her brother's estate, which represents the amount intended by testator when he executed his will.

The order of the circuit court is affirmed, with directions to remand to the probate court of Wayne county for further disposition in accordance with this opinion. Defendants may recover costs.

Dethmers, Butzel, Carr, and Bushnell, JJ., concurred with Sharpe, J. Reid, C. J., and Boyles and North, JJ., concurred in the result.