ESTATE OF ROBERT F. KLEIN, DECEASED, GLADYS KLEIN, PERSONAL REPRESENTATIVE, petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Klein v. Comm'r
Docket No. 30093-88 United States Tax Court
T.C. Memo 1990-527; 1990 Tax Ct. Memo LEXIS 581; 60 T.C.M. (CCH) 953; T.C.M. (RIA) 90527; October 4, 1990, Filed *581 Decision will be entered for the respondent. Petitioner is the Estate of Robert F. Klein (decedent). Decedent's will provided that the residue of his estate was to pass to a trust created by decedent prior to his death and prior to the elimination by the Economic Recovery Tax Act of 1981 of the limitation on the marital deduction then contained in sec. 2056. Decedent died after that limitation was eliminated, and the residue of his estate passed to the trust. A portion of the corpus of the trust was then used to fund a marital trust. The amount funding the marital trust was limited (under one alternative) to the greater of 50 percent of the adjusted gross estate or $ 250,000. Petitioner argued that the alternative in question showed decedent's intent to incorporate into his estate plan the maximum marital deduction allowed by sec. 2056, since the language reflected the maximum deduction allowed by that section at the time the language was adopted. Held: The language in question unambiquously limits funding of the marital trust to the greater of 50 percent of the adjusted gross estate or $ 250,000, and respondent's determiniation of a deficiency in estate tax is sustained. Harold *582 Stern, for the petitioner. Lynn M. Brimer, for the respondent. HALPERN, *Judge. HALPERN
MEMORANDUM OPINION By notice of deficiency dated August 25, 1988, respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 372,435. The only issue presented in this case is whether petitioner is entitled to a marital deduction in excess of $ 1,773,245. Section 2056[1] provides for a deduction (the marital deduction) in determining the taxable estate of a decedent for certain bequests and other amounts passing from the decedent to his or her surviving spouse. The parties submitted this case fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner is the Estate of Robert F. Klein, Gladys Klein, Personal Representative. At the time the petition in this case was filed, petitioner's *583 legal address was in Richmond, Michigan. On February 29, 1980, Robert F. Klein (decedent) executed an agreement of trust between himself, as settlor, and himself and Glady's M. Klein as trustees. That agreement (the Trust Agreement) styles the trust thereby created (the Trust) a Revocable Living Trust. On the same day, decedent executed his will. The will provides that the residue of decedent's estate is distributable to the Trust, after payment of debtrs, expenses, and taxes. Decedent died on June 30, 1984, without having made any amendments to the Trust or codicils to the will. Decedent was survived by his wife, Gladys M. Klein. Article VI of the Trust Agreement provides, in part, as follows: BENEFICIEARIES OF TRUST ESTATE
Uppon the death of the Settlor, the entire trust shall be held and managed for the following uses and purposes: MARITAL TRUST
If Settlor's wife, GLADYS MARIE KLEIN, survives the Settlor, there shall be allocated to the Marital Trust that interest in the balance of Settlor's Adjusted Gross Estate which, when taken together with all other interest and property that qualify for the Marital Deduction and that pass or shall have passed to Settlor's wife otherwise *584 than by the terms of this Paragraph, shall be needed to obtain the Optimum Marital Deduction allowable in determining the Feferal Estate Tax upon Settlor's Adjusted Gross Estate as defined herein. The Optimum Marital Deduction shall be that amount which when combined with the estate owned by Settlor's spouse, will result in the approximate equalization of the estates of the Settlor and Settlor's spouse and occasion the lowest possible Federal Estate Taxes in both of said estates. The Optimum Marital Deduction sall be the greater of Fifty Percent (50%) of Settlor's Adjusted Gross Estate or Two Hundred Fifty Thousand and 00/100 Dollars ($ 250,000.00) in any case where, in the opinion of the Trustees, the application of the foregoing equalization principle would in effect, produce a substantially identical result or the Trustees are prevented from utilizing it by any rule of law, court decision, or transcendent consideration. In the event Settlor's wife fails to survive the Settlor, the foregoing provisions of this Paragrapph shall be of no effect, and the property otherwise allocated to the Marital Trust hereunder shall rather be allocated to the Family Trust hereinafter set forth. *585 There shall be allocated to the Family Trust the remaining interest in the balance of Settlor's Adjusted Gross Estate. The interests allocated to the Marital Trust and Family Trust shall be determinied and fixed by usin asset values as finally determined for Federal Estate Tax purposes and shall be apportioned between said trusts by the Trustees such that future appreciation or depreciation in such assets or interests shall be allocated to the marital Trust which would under then current Federal Tax laws, be excludable from the Settlor's gross estate, as for example, an interest in a qualified Pension or Profit Sharin Plan or Trust. The fixed percentages of the balance of the Adjusted Gross Estate allocated to the Marital Trust and the Family Trust (Residual Trust) appropriately adjusted to reflect any partial distribution or distributions, shall, for all distributional purposes, be apppplied to the assets valued at their fair market value at the time or times of distribution. Article X of the Trust Agreement (entitled ADMINISTRATIVE PROVISIONS) provides in paragraph 31 that the Trust Agreement shall be construed under the laws of the State of Michigan. The decedent died a resident *586 of the State of Michigan. An estate tax return was timely filed on behalf of petitioner reflecting a ross estate of $ 3,234,702.12, an adjusted gross estate of $ 3,211,920.87 and claiming a marital deduction of $ 2,871,920.87. In his notice of deficiency, respondent determined that petitioner's marital deduction was limited to $ 1,773,245. Such amount is equal to the value of joint property, insurance, and individual retirement account benefits includable in decedent's gross estate that passed directly to Mrs. Klein, the surviving spouse, by operation of law or otherwise, outside of Article VI of the Trust Agreement (the marital trust provision.) Thus, respondent disallowed $ 1,098,675.87 of the marital deduction claimed by petitioner. Petitioner maintains that the marital deduction is $ 2,871,920.87, as claimed on the estate tax return. Petitioner's Argument Petitioner's argument may be summarized briefly. On the date decedent executed his will and entered in to the Trust Agreement (February 29, 1980), section 2056(c) limited the marital deduction to the greater of $ 250,000 or 50 percent of the value of the adusted ross estate. Such limitation was repealed by section 403(a)(1)(A) *587 of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 9f5 Stat. 305, 1981-2 C.B. 256, 324 (such Act hereinafter referred to as ERTA). As a result, an unlimited marital deduction generally is allowable to the estates of decedents dying after December 31, 1981, the effective date of section 2056(c), as amended. The decedent died on June 30, 1984, and ,thus, the unlimited marital deduction provided for by ERTA applies to his estate. [2] For purposes of the marital deduction, qualifying property passed from decedent to Mrs. Klein, his surviving spouse, both pursuant to the marital trust provision and otherwise than pursuant to the marital trust provision and otherwise than pursuant to that provision (e.g., in the latter class, for example, Mrs. Klein's succession to jointly owned property). For convenience, property in the latter class hereinafter will be referred to as qualifying property passing outside of the Trust Agreement. The marital trust provision directs the trustees to fund the marital Trust with that amount of property needed to obtain the Optimum Marital Deduction. Such amount is the amount of trust property that, in combination with qualifying non-trust property, will *588 produce the Optimum Marital Deduction. [3] *591 The term Optimum Marital Deduction is defined in the alternative. It is either: "Alternative 1" [T]hat amount which when combined with the estate owned by Settlor's spouse, will result in the approximate equalization of the estates of the Settlor and Settlor's spouse and occasion the lowest possible Federal Estate Taxes in both of said estates. or "Alternative 2"
[T]he greater of Fifty Percent (50%) of Settlor's Adjusted Gross Estate or Two Hundred Fifty Thousand and 00/100 Dollars ($ 250,000.00) in any case, where in the opinion of the Trustees, the application of the foregoing equalization principle would in effect, produce a substantially identical result or the Trustees are prevented from utilizing it by any rule of law, court decision, or transcendent consideration. Petitioner recognizes that the estate equalization principle contained in Alternative 1 would have limitedthe transfer to the Marital Trust to a maximum of 50 percent of decedent's estate. Petitioner reads Alternative 2 as providing for the transfer of an unlimited amount and argues that ERTA's elimination of a cap on the marital deduction was the transcedent consideration *589 that allowed the trustees to abandon Alternative 1 and invoke Alternative 2. Petitioner avoids the appparent limitation in Alternative 2 by saying that the limiting language of that alternative -- "the greater of Fifty Percent (50%) of Settlor's Adjusted Gross Estate of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000)" -- is virtually identical to the limitation contained in section 2056(c) prior to its amendment by ERTA. To petitioner, that indicates decedent's intent to incorporate into his estate plan the maximum marital deduction allowed by the statute. To petitioner, the language of Alternative 2 is ambiguous, although the ambiguity did not manifest itself until, with ERTA, Congress provided for an unlimited marital deduction. The essence of petitioner's argument can perhaps best be appreciated by considering petitioner's own words: The alternative marital deduction provision in the Petitioner's trust anticipated future changes in the law by invoking the highest marital deduction available in place of the estate equalization principle set forth in the initial paragraph of the marital deduction, when in the opinion of the Trustees, it was warranted by a "transcendent *590 consideration" of which the amendment of § 2056(c) is certainly a prominent one. [Petitioner's Reply Brief, p.4.] Respondent's Argument
Respondent agrees that petitioner is entitled to a marital deduction in computin the taxable estate. Respondent further agrees that, as amended by section 404(a)(1)(A) of ERTA, section 2056(c) does not limit the marital deduction available to petitioner. Resppondent argues, however, that no property qualifying for the marital deduction passed from decedent to his surviving spouse pursuant to the terms of the Trust Agreement. [4] Respondent contends that the only propert passing from decedent to his surviving spouse that qualified for the marital deduction passed outside of the Trust Agreement. Respondent reads the marital trust provision as containing a limitation on the amount of *592 property trhat can be allocated to the Marital Trust. Under that limitation, after taking into account qualifying property passing outside of the Trust Areement, the Marital Trust is to be funded with the amount of property needed to obtain the Optimum Marital Deduction. As previously discussed, the Optimum Marital Deduction is described in the alternative. Respondent first considers Alternative 1 and concludes that, pursuant to the instruction in that alternative to equalize the estates of the decedent and surviving spouse, no more thant 50 percent of the decedent's estate could pass to the surviving spouse pursuant to Alternative 1. Fifty percent of the gross estate is $ 1,617,351.06. Respondent next considers Alternative 2 and concludes that, since the adjusted gross estate exceeds $ 500,000, the maximum anount that could pass to the surviving spouse pursuant to Alternative 2 would be 50 percent of the adjusted ross estate. Fifty percent of the adjusted ross estate is $ 1,605,960.44. Comparing the two altrernatives, respondent concludes that, potentially, the Optimum Marital Deduction is greater under Alternative 1 than it is under Alternative 2. However, since under the marital *593 trust provision, the Maritial Trust is to be funded only with a value of property equal to the excess of the Optimum Marital Deduction over the value of qualifying property passing outside of the Trust Agreement, respondent requires that a comparison be made between such two values. If the latter exceeds the former, then, concludes respondent, the Marital Trust is left unfunded. [5] Respondent asserts, and petitioner does not contest, that the value of qualifying property passing outside of the Trust Agreement -- consisting of joint property insurance proceeds, and pension benefits -- equals $ 1,773,245, which exceeds the potential Optimum Marital Deduction (as determined by respondent). Thus concludes respondent, the Marital Trust is left unfunded. A marital deduction is allowable only for the value of qualifying non-trust property, or $ 1,773,245. Respondent's argument differs from petitioner's in that he sees the term Optimum Marital Deduction bounded by limitations contained within the four corners of the marital trust provision. He does not understand that the language of the marital trust provision (and, in particular, that of Alternative 2) is a direction to look to section 2056 *594 to discover the upward bound on the Optimum Marital Deduction. To him the relevant language is both explicit and unambiguous, and there is no call to go beyond that language to discover decedent's intent. Discussion
This case requires us to give meaning to certain language used in the Trust Areement. Petitioner argues that the Trust Agreement is ambiguous. We agree with respondent that, on its face, the relevant language is both explicit and unambiguous, and would support respondent's determination of the allowable marital deduction. Whether we are to go beyond such explicit and unambiguous language requires an analysis of the law governing the interpretation and construction of testamentary instruments. It is well-established principle of law that the interpretation and construction of wills and trust documents are governed by state law. Helverin v. Stuart, 317 U.S. 154, 161 (1942) *595 (modified by 317 U.S. 602 (1942). Article X of the trust Agreement provides that such agreement shall be governed by the law of the State of Michigan. Thus, in determining the interests that pass via the marital trust provision, we must look to the law of Michigan. Old Kent State Bank and Trust Co. v. United States, 362 F.2d 444, 449 (6th Cir. 1966). In addition, we must ascertain the law of Michigan as it would be applied by the Supreme court of the State. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). It is a fundamental rule of law in Michigan that the "primary duty of any Court faced with the task of resolving a disputed testamentary disposition is to effectuate as nearly as possible the intention of the testator." In re Estate of Butterfield, 405 Mich. 702, 275 N.W.2d 262, 266 (1979); In re Dodge Testamentary Trust, 121 Mich. App. 527, 330 N.W.2d 72, 79 (1982). That involves the process of interpreting the instrument and, if the testator's intention cannot fully be ascertained from such interpretation, applying rules of construction to assign meaning. T. Atkinson, Law of Wills, ch. 15, § 146, 809-10 (2d ed. 1953). When there is no ambiguity in the instrument, the question *596 is one of interpretation, and the intent of the testator is to be "gleaned from the four corners of the instrument." In re Estate of Butterfield, 275 N.W.2d at 266. Where there is an ambiguity is "patent" if the uncertainty as to meaning "appears on the face of the instrument, and arises from the defective, obscure, or insensible language used." An ambiguity is "latent" "where the language employed is clear and intelligible and sugests but a single meaning, but some extrinsic fact or estraneous evidence creates the possibility of more than one meaning." Estate of Butterfield, 275 N.W.2d at 266 n.6 (quoting Black's Law Dictionary (4th ed.) for the definition of ambiguity (6th ed. the same)). Where an ambiguity exists, whether patent or latent, there are two external sources through consideration of which a court may establish the intent of the testator: (1) surrounding circumstances and (2) rules of construction. In re Estate of Butterfield, 275 N.W. 2d at 266. The ambiguity here is argued to be with regard to Alternative 2. The relevant language of Alternative 2 -- "the greater of Fifty Thousand and 00/100 Dollars ($ 250,000)" -- mirrors the language of the statue (section 2056(c), *597 prior to its amendment by ERTA). To the Court, it is neither defective, obscure, nor insensible. We find that it evidences no patent ambiguity. Petitioner maintains, however, that ERTA's elimination of any limit on the marital deduction creaated a latent ambiguity. Petitioner bears the burden of proof. Rule 142(a). As the Court understands petitioner's argument, it is that decedent intended the largest possible marital deduction possible. Since, at the time the Trust Agreement was entered into, the largest possible marital deduction was limited to the greater of 50 percent of the adjusted gross estate of $ 250,000, decedent incoroporatedthat limitation into the marital trust provision. Had a larger deduction been available, decedent would have incorporated commensurately less limited language. Thus, argues petitioner, with the enactment of ERTA, and the elimination of any limitation on the marital deduction, decedent's chosen language became ambiguous, since decedent's underlying intent was to provide the largest marital deduction possible. [6] *598 We disagree. We do not find any latent ambiguity in the relevant language in Alternative 2. Clearly, after an individual has made his will (or otherwise effected the disposition of his property at death), the law that affects the construction or the effect and operation of the will may be changed. In cases of that sort, the question is presented whether the law as it stood when the will was made, the law as it stood at the decedent's death, or the law as it stood when the estate in question vested must apply. If the question is limited to one of construction, that is, to determining the intentions of the decedent from the language of the will when read in the light of the surrounding circumstances, it is generally said that the law that was in force when the will was executed is the law that determines the intention of the decedent unless the will shows that the decedent intends to be governed by the law that determines *599 the intention of the decedent unless the will shows that the decedent intends to be goverened by the law of some point other than execution of the will. 4 Page on Wills § 30.27 (W. Bowe & D. Parker 1961 & Supp. 1990). See Morrow v. Detroit Trust Co., 330 Mich. 635, 48 N.W.2d 136, 140 (1951); Hund v. Holmes, 395 Mich. 188, 235 N.W.2d 331, 336 (1975) (coleman, J. dissenting). While we are dealing with an agreement of trust, and not a will, we do not understand the rule to be any different. No provision of the Trust Agreement (nor, for that matter, the will) shows that the decedent intended the meaning of the term Optimum Marital Deduction to be governed by section 2056(c) as in effect when the Trust Agreement became operative to fund the Marital Trust. In the portion of the trust Agreement set forth above, a reference is made to "then current Federal Tax laws," in describing assets to be allocated to the Marital Trust. No similar reference is made in describing the Optimum Marital Deduction. We cannot help but conclude from decedent's specific reference to current tax law that decedent was aware of Federal tax considerations and, where intended, took account of possible changes. *600 Section 2056(c), as in force when the Trust Agreement was entered into, clearly and unambiguously is reflected in Alternative 2. Nothing in the Trust Agreement (nor the will) dissuades us from the conclusion that the decedent intended to be governed by that law. Moreover, the petitioner has shown no surrounding circumstance (other than the change in law itself) that alters that conclusion. Having found no ambiguity (either patent or latent) in the relevant language of the Trust Agreement, the intent of the decedent is to be "gleaned from the four corners of the instrument." In re Estate of Butterfield, 275 N.W.2d at 266. Decedent, within those four corners, defined and limited the interest he intended to trasfer to Mrs. Klein via the marital deduction provision. Decedent intended to transfer to the Marital Trust an interest identified as the Optimum Marital Deduction. The Optimum Marital Deduction is defined in the alternative. Both alternatives, Alternative 1 -- the equalization clause -- and Alternative 2 -- the fifty percent clause -- indicate an intent to fund the Marital Trust with a maximum of approximately one-half of decedent's estate. We are thus prepared to agree with *601 respondent's reading of the Trust Agreement. Nevertheless, there are two qualifications or exceptions that we must keep in mind. Atkinson, supra at 811. See In re Estate of Butterfield, 275 N.W.2d at 267. Even when it appears that the testator's intent is clear, so that we may limit our analysis to the document itself, those two qualifications apply: "If the testator employed a draftsman skilled in the use of technical words these must be given their technical meaning. It is practically necessary that the testator's intent should be identified with that of the agent whom he employed to express the intent. Furthermore, to the extent that either a statute or established rule of decision attributes a certain meaning to particular words, that meaning must be accepted. * * *" [In re Estate of Butterfield, 275 N.W.2d at 267 (citing Atkinson, supra at 811)]. Those qualifications and the facts that the Trust Agreement was drafted by a lawyer and that Alternative 2 reflects clearly the language of prior section 2056(c) bolster our conclusion that the Optimum Marital Deduction (and Alternative 2, in particular) is to be read as respondent urges us to read it. Conclusion
The marital trust *602 provision clearly states that "there shall be allocated to the marital trust that interest . . . which, when taken together with all other interests and property that qualify for the marital deduction . . . shall be needed to obtain the Optimum Marital Deduction . . ." The Optimum Marital Deduction is described as that amount that will equalize the decedent's and his surviving spouse's estates or, in the event the equalization clause is ineffective, the greater of 50 percent of decedent's adjusted gross estate or $ 250,000. On the facts of this case, the maximum amount that can pass under the marital trust provision is 50 percent of the gross estate. An amount in excess of 50 percent of the gross estate, consisting of joint property, insurance proceeds, and pension benefits, was qualifying property passing outside of the Trust Agreement. As the amount passing pursuant to the marital trust provision must be reduced by qualifying non-trust property (roughly 55 percent of the adjusted gross estate), no amount passes under the marital trust provision. Therefore, petitioner is allowed a marital deduction only for the value of qualifying property passing outside of the Trust Agreement, *603 or $ 1,773,245. Respondent's determination of deficiency is sustained. For the foregoing reasons, Decision will be entered for the respondent. Footnotes
*. By Order of the Chief Judge, this case was reassigned to Jude James S. Halpern for disposition.↩
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect as of the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Congress limited the application of the unlimited marital deduction in certain cases. Section 403(e) (3) of ERTA retains the limitation of prior law in the case of decedents dying after December 31, 1981, where, among otherthings, property is received by a surviving spouse pursuant to a will executed or a trust created prior to 30 days after the date of enactment of ERTA and containin a formula marital deduction clause. By that rule, Congress intended to forestall a result unintended by decedents who, in their estate planning, had adopted a formula expressly providing that their sppouse was to receive the maximum amount of property qualifying for the marital deduction. See S. Rept. No. 97-144, 1981-2 C.B. 412, 462. Respondent does not argue that section 403(e) (3) of ERTA limits the marital deduction available to petitioner to the pre-ERTA maximum. Compare Estate of Levitt v. Commissioner↩, 95 T.C. (Sept. 13, 1990).
3. Put another way, the trustees are to determine the amount of property to fund the Marital Trust by a process of subtraction. The Optimum Marital Deduction is the minuend, qualifying property passing outside of the Trust Areement is the subtrahend, and the difference (if a positive number) is the amount with which the Marital Trust is to be funded. Of course, if the subtrahend (qualifying property passing outside the Trust Agreement) exceeds the minuend (Optimum Marital Deduction), the difference will be a negative number, and the Marital Trust will not be funded. As will be seen, that is precisely what respondent argues has occurred.
4. The marital trust provision provides that the entire corpus of the Trust is to be allocated between the Marital Trust and the Family Trust. Neither petitioner nor respondent disagree that, with regard to such corpus, only property allocated to the Marital Trust can qualify for the marital deduction.↩
5. See n. 3, supra↩.
6. Petitioner conceds that, had decedent adopted a formula clause expressly referring to the maximum allowable marital deduction, and had decedent not amendedthat clause subsequent to the enactment of ERTA, then, pursuant to section 403(e)(3) of ERTA, petitioner would have been denied an unlimited marital deduction. Petitioner would congratulate decedent for being clever enough to avoid that verbal trap.