*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF RANDALL W. GUISE.

---

| | |
|---|---|
| DAVID PAVKA, Personal Representative of ESTATE OF RANDALL W. GUISE, | UNPUBLISHED July 23, 2019 |
| Appellee, | |
| v | No. 344217 Hillsdale Probate Court |
| SUSAN NULL, | LC No. 15-035435-DE |
| Appellant. | |

---

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

In this probate estate administration matter, Susan Null appeals from the probate court's order denying her claim on behalf of herself and other members of decedent Randall Guise's family asserting the right under decedent's will to the cash value of two automobiles sold by the personal representative of decedent's estate, David Pavka, to satisfy decedent's outstanding debts. This matter returns to this Court following additional proceedings in accordance with this Court's decision in *In re Guise Estate*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 2017 (Docket No. 334771). In its previous decision, this Court held that Article III of decedent's will unambiguously devised decedent's personal belongings to certain family members and that the terms of the will charged Null and another family member, Andrew Guise, with sorting through decedent's personal property and identifying what personal property ought to be distributed. See *Guise*, unpub op at 3-4. Recognizing that the mechanics for effecting this identification and distribution arrangement remained imprecise, the panel further held that the will also unambiguously required that remaining personal property not so identified

-1-

and distributed, if any, be sold at auction and the proceeds used to supplement other devises to decedent's church, the humane society, and other various nonfamily recipients. *Id.*[1]

The record demonstrates that, on remand, Null performed this required task. However, in this current appeal, Null now claims that there were two additional automobiles that Pavka sold during administration to achieve the liquidity necessary to satisfy other debts of the estate. Null contends that these two automobiles constituted personal property intended for distribution to family members under Article III. Although the will did not specifically identify any particular items of decedent's personal property, Null argues that the sorting and identification process required by the will and completed by her and Andrew established specific devises that should have had priority for distribution on a proportionate basis as to other specific devises if there were insufficient funds available in the estate. Although the timing of the sale of the automobiles in relation to Null's sorting and identification of decedent's personal belongings is not clear in the record, Null would have this Court infer that she did identify, or would have identified, the two automobiles sold by Pavka as personal property that should remain in the family, thus rendering them specific devises. Pavka contends that the devise in Article III is a general devise and that the trial court did not err in rejecting Null's claim for the vehicles' cash value. We affirm.

Much of the relevant procedural and factual history of this case is set forth in our previous decision:

> This appeal arises from a probate proceeding following the death of Randall W. Guise on October 28, 2015. At the time of his death, Randall was survived by 12 nieces and nephews. Pavka was appointed personal representative to proceed with the informal probate of the estate in November 2015.
>
> Randall executed his last will and testament on July 21, 2015. The will contains the following provision at issue in this case:
>
> "ARTICLE III
>
> "I, Randall W. Guise, upon my death, direct that all of my personal belongings shall be distributed as follows:
>
> "Andrew Guise and Susan Null shall sort through all of the household goods, antiques, tools, and all other items of personal property and identify those items which shall stay within the Guise and Knapp family. Those items identified shall be distributed to members of those families, with the exception of Rhonda Duchette and Bob Guise. Neither of these individuals shall take from my estate and are being purposely omitted.

---

[1] This Court denied Null's motion for reconsideration of our prior decision. See *In re Guise Estate*, unpublished order of the Court of Appeals, entered December 27, 2017 (Docket No. 334771).

"The remainder of personal property shall be placed for sale at auction and any proceeds therefrom shall be distributed pursuant to Article VII below."

Article VII provides a list of persons and charities to which the proceeds should be given.

In February 2016, Null met with five other nieces and nephews and distributed Randall's personal belongings. Null retained a John Deere tractor for herself and later sold it for $2,000. Pavka subsequently moved the probate court for an order requiring Null to return the $2,000 and any other items removed from Randall's home. According to the motion, Article III only allowed the identification and distribution of heirlooms, not all personal property. Pavka argued that the John Deere tractor and other valuable items were not heirlooms and should not have been distributed to Null. Null responded that Article III mandated the identification and distribution of all of Randall's personal property and that she had not acted beyond the scope of her authority. Later, Thomas Guise—Randall's nephew—objected to the distribution, stating that he had not been informed of the February 2016 meeting and that the distribution was unfair.

The probate court adopted Pavka's interpretation of the will, holding that Article III only provided for the identification and distribution of heirlooms due to Article III's language of "shall stay within . . . the family." The probate court ordered Null to return the $2,000 received from the sale of the tractor. It also ordered that a family-only auction should be held as to certain items—a golf cart, a Ford tractor, and a Great Dane semi-trailer—with the proceeds being distributed under Article VII. [*Guise*, unpub op at 1-2.]

On appeal, Null argued that the probate court erred when it determined that Article III of decedent's will pertained only to heirlooms and not all personal property, including any vehicles, trailers, or tractors. *Id*. at 2. We agreed:

Pursuant to the plain language contained within Randall's will, we conclude that Article III directed Null and Andrew to identify which of Randall's personal belongings would be distributed to the family members versus which would be sold at auction. Null's and Andrew's authority to identify these items was limited only to personal property. The words "which shall stay within" defines a subset of the personal property of items that were not to be sold at auction by operation of the will based on Null's and Andrew's discretion. [*Id*. at 3.]

Accordingly, we concluded:

The probate court erred in its determination that Article III only allowed for the identification and distribution of heirlooms to Randall's family rather than all personal property. However, although Article III gave Null and Andrew the authority to identify which personal belongings should be distributed to Randall's family and which personal belongings should be auctioned for the benefit of the

-3-

persons and charities named in Article, [sic] VII, Article III did not give Null and Andrew the authority to distribute the personal belongings. Accordingly, Null's distribution of Randall's personal belongings was beyond the scope of her authority. We therefore affirm the probate court's order that Null return to the estate the $2,000 she took from her sale of the John Deere tractor: Null did not have the authority to distribute the tractor to herself and to then subsequently sell it and retain the proceeds. On remand, the personal representative shall exercise his authority to distribute to Randall's nieces and nephews the personal property Null identified.

We reverse the probate court's order requiring the auction of the golf cart, Ford tractor, and Great Dane semi-trailer within the family and mandating that proceeds be distributed according to Article VII, as this personal property is required to be distributed to Randall's nieces and nephews in accordance with Article III.

Following our decision, the probate court held a status conference to determine how to comply with the decision and what issues remained for resolution. It does not appear that there was a transcript from the status conference. However, the probate court invited both parties to submit briefing on this issue. Relevant to the issue currently on appeal,[2] Null asserted that a 2010 GMC Acadia and a 2004 Buick LeSabre owned by decedent at the time of his death should have been included within the personal property available for identification and distribution to family members under Article III. Null argued that the sorting and identification process set forth in Article III demonstrated that the devise was specific and that, accordingly, when Pavka sold these vehicles to provide liquidity in administering decedent's estate, Null and the other family devisees set forth in Article III remained entitled to the cash value of the vehicles or a proportionate distribution from other specific devises if there were insufficient funds available.

On April 6, 2018, Null filed a motion asserting that the personal representative improperly distributed estate assets. Null sought a cash distribution, as well as attorney fees. Null argued as follows:

It's not objectionable Pavka sold estate assets to pay priority expenses: costs of administration and funeral and burial expenses, as reported. However, it is contrary to [the] EPIC that Pavka should simply consider a specific devise attached to such property as lost without further analysis. The nieces and nephews have a right to their specific devises and those specific devises should not abate except to the extent abatement of residuary and general devises are insufficient. Even to the extent specific devises must abate, the abatement of the nieces' and nephews' specific devises must abate in proportion to other specific devises.

---

[2] There were several other issues presented to the probate court, such as whether Null deserved attorney fees, which are not part of this current appeal.

The probate court held a hearing on Null's motion on May 31, 2018. In an oral decision, the trial court denied Null's request for attorney fees, ordered that the previously distributed personal property remain distributed as agreed, ordered the distribution of the cash returned to the estate, and held that neither Null nor any other family members were entitled to any further distribution under the terms of decedent's will. Null now appeals.

We review de novo the proper interpretation of a will. *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013). "When interpreting a will, the probate court's role is to ascertain and give effect to a testator's intent, which it gleans solely from the plain language of the will unless there is an ambiguity." *Id*. (quotation marks, citation, and alteration omitted). We also review de novo issues of statutory interpretation and interpret statutory words and phrases according to their commonly understood meanings. *Id*. We hold that the trial court did not err in determining that Null was not entitled to the cash value of the two automobiles sold during administration.

The parties ask this Court to determine whether Article III constituted a specific devise or a general devise of decedent's personal property. The parties appear to agree that, for purposes of resolving their disagreement, this classification affects the order of estate distribution and the determination whether decedent's family members are entitled to obtain any recompense as a result of the personal representative selling the two automobiles in order to pay other debts, bills, and administration costs of decedent's estate.[3]

Article III of the Estates and Protected Individuals Code (EPIC), MCL 700.3101 *et seq.*, governs probate of wills and estate administration. See *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 772 (2011). When the assets of an estate are insufficient to satisfy all of the grants of a will, the Legislature has provided the applicable rule of abatement for prioritizing the distribution of particular grants in a decedent's will. MCL 700.3902 provides:

> (1) Subject to subsections (2) and (3) and except as provided in section 2301(3) or 2302(1)(b)(*iv*), distributees' shares abate, without a preference or priority between real and personal property, in the following order:
>
> (a) Property not disposed of by the will.
>
> (b) Residuary devises.
>
> (c) General devises.

---

[3] We note at the outset that while we do not agree with Null's characterization of the trial court's decision as erring by overemphasizing the "ordinal-primacy" of decedent's will, we do acknowledge that the trial court's reasoning was not a model of clarity because the oral decision was complicated by other related issues not raised on appeal. However, we ordinarily uphold a trial court's ruling even if we conclude that the trial court reached the right result for the wrong reason. See *Helton v Beaman*, 304 Mich App 97, 100; 850 NW2d 515 (2014), aff'd 497 Mich 1001 (2015).

(d) Specific devises.

(2) For purposes of abatement, a general devise charged on specific property is a specific devise to the extent of the value of that specific property and, upon the failure or insufficiency of the property on which the devise is charged, a general devise to the extent of the failure or insufficiency. Abatement within each classification is in proportion to the amount of property each beneficiary would have received if full distribution of the property had been made in accordance with the terms of the will.

(3) If the will expresses a different order of abatement, the will controls. If the testamentary plan or the devise's express or implied purpose would be defeated by the order of abatement stated in subsection (1), the distributees' shares abate as found necessary to give effect to the testator's intention.

(4) If the subject of a preferred devise is sold or used incident to administration, abatement shall be achieved by appropriate adjustments in, or contribution from, other interests in the remaining assets.

The EPIC defines "devise" to mean "when used as a noun, a testamentary disposition of real or personal property and, when used as a verb, to dispose of real or personal property by will." MCL 700.1103(l). The Legislature provided no unique definition of "specific devise," but does provide that "[a] specific devisee has a right to the specifically devised property in the testator's estate at death," subject to certain conditions and exceptions. See MCL 700.2606(1). Black's Law Dictionary defines "specific devise," as "[a] devise that passes a particular piece of property."[4] *Black's Law Dictionary* (10th ed). As an additional interpretative aid, our Supreme Court instructed, albeit in a decision predating the EPIC by nearly a half-century, that "the nature of a legacy as specific, general, or demonstrative is to be determined in accordance with the intention of the testator, which is to be gathered not merely from the language of those clauses establishing the particular gift in question alone, but from the will as a whole, and the

---

[4] "Consulting a lay dictionary is proper when defining common words or phrases that lack a unique legal meaning, but when the statutory term is a legal term of art, the term must be construed in accordance with its peculiar and appropriate legal meaning." *Farris v McKaig*, 324 Mich App 349, 354; 920 NW2d 377 (2018) (quotation marks and citation omitted). Black's Law Dictionary defines "devise" as follows, in pertinent part:

1. The act of giving property by will. • Although this term traditionally referred to gifts of real property — and in British usage the term is still confined to real property — in American usage the term has been considerably broadened. In both the Restatement of Property and the Uniform Probate Code, a disposition of any property by will is a devise. In the United States today, it is pedantry to insist that the noun devise be restricted to real property. [*Black's Law Dictionary* (10th ed).]

circumstances surrounding the testator at the time of its execution." *Morrow v Detroit Trust Co*, 330 Mich 635, 644; 48 NW2d 136 (1951).

Returning to the precise language of decedent's will, we find that decedent's devise of personal property was of a general nature. We have already determined that decedent did not intend to devise *all* of his personal property to his family members. See *Guise*, unpub op at 3 ("The words 'which shall stay within' defines a subset of the personal property of items that were not to be sold at auction by operation of the will based on Null's and Andrew's discretion."). Nothing about decedent's use of a postmortem sorting and identification arrangement for fairly distributing his personal belongings transformed the devise to family into "[a] devise that passes a particular piece of property." In fact, this postmortem sorting and identification process only confirms that decedent did not specifically intend any particular piece of property to pass in a particular manner as a specific devise. Therefore, we agree with Pavka that Article III only contained a general devise.

We also agree that Articles I and II of decedent's will expressly permitted Pavka, as personal representative, to sell decedent's property as necessary in order to promptly pay his debts and burial expenses. Null has not alleged bad faith or provided any other reason for this Court to interfere with the personal representative's sale of the vehicles. Contrary to Null's argument on appeal, the mere categorization of the automobiles as personal property did not unreservedly entitle the family to the distribution of those automobiles or their equivalent cash value in light of the other competing circumstances of estate administration. Cf. *In re Smith Estate*, 252 Mich App 120, 128-129; 651 NW2d 153 (2002) (concluding that a devisee's rights under a will "do not so definitely belong to a person that they cannot be impaired or taken away without the person's consent"). Rather, the Legislature intended the EPIC to provide the latitude necessary to facilitate the prompt administration and settlement of estates. See MCL 700.3101 (stating that "[a]n individual's power to leave property by will, and the rights of . . . devisees . . . to his or her property, are subject to the restrictions and limitations contained in [the EPIC] to facilitate the prompt settlement of estates," including administration). The trial court's determination was consistent with the terms of decedent's will and the requirements of the EPIC. Null does not provide any legal authority for concluding otherwise.

Affirmed.


/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro